## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW ADAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.:  3:11-cv-00427-JCH |
| | : | |
| FESTIVAL FUN PARKS, LLC, | : | |
| D/B/A LAKE COMPOUNCE, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT
### FESTIVAL FUN PARKS, LLC FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

Defendant, Festival Fun Parks, LLC d/b/a Lake Compounce ("Defendant," "Festival Fun Parks," or "Lake Compounce"), by and through its undersigned counsel, Fisher & Phillips LLP, respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment.

**II.    SUMMARY OF THE CASE**

Plaintiff Andrew Adams ("Plaintiff") instituted this action against Festival Fun Parks claiming eight separate causes of action:  (1) violation of the Americans With Disabilities Act ("ADA") – disability discrimination; (2) violation of the Connecticut Fair Employment Practices Act (the "CFEPA") – disability discrimination; (3) violation of the CFEPA – gender discrimination; (4) violation of Title VII of the Civil Right Act of 1964, as amended ("Title VII") – gender discrimination; and (5) violation of Title VII – hostile work environment sexual harassment; (6) violation of the CFEPA – hostile work environment sexual harassment; (7) violation of the CFEPA – retaliation; and (8) violation of Title VII – retaliation.  See Plaintiff's Amended Complaint, a true and correct copy of which is attached hereto as Exhibit A (hereinafter "Exh. A").

Summary judgment should be granted in Lake Compounce's favor on each claim for the following reasons, as well as those set forth more fully below:

- Plaintiff cannot establish a prima facie claim for disability discrimination under the ADA and the CFEPA because he has presented no admissible evidence that he is disabled within the meaning of these statutes; and

- Plaintiff cannot establish that he suffered an adverse employment action, a necessary element of his prima facie case on each of his claims -- his ADA and CFEPA disability claims, his Title VII and CFEPA gender discrimination claims, his Title VII sexual harassment claim, and his Title VII and CFEPA retaliation claims; and

- Even if Plaintiff could make out a prima facie case on his claims, Festival Fun Parks is entitled to summary judgment because it possesses a legitimate non-discriminatory basis for the alleged adverse employment action, and Plaintiff can present no evidence that this legitimate action was pretextual.

## III.   STATEMENT OF FACTS

### A.   Plaintiff's Employment with Festival Fun Parks

Plaintiff was a Mechanic Helper at the Lake Compounce theme park at the time of the termination of his employment.[1]  See January 20, 2012 deposition of Plaintiff at pp. 16:2-10, a true and correct copy of the relevant portions of which is attached hereto as Exhibit B (hereinafter "Exh. B").  As a Mechanic Helper, Plaintiff's responsibilities included washing parts

---

[1]   Festival Fun Parks owns and operates the Lake Compounce theme park located in Bristol, Connecticut, where Plaintiff was employed.  See Exh. C, Declaration of J. Brick, at ¶ 3. "Festival Fun Parks" and "Lake Compounce" are therefore used interchangeably.

of the rides, assisting other mechanics take things apart, cleaning out the shop, and assisting with various park departments as needed.  See Exh. B at 16:11-19.

Prior to working full-time as a Mechanic Helper, Plaintiff had previously worked for Lake Compounce as a seasonal employee each summer in the years between 1997 and 2007. See Exh. B at 13:15-19; 13:25-14:4; 14:12-15; 15:14-16:1.  Between 1997 and 2003, Adams held various positions at Lake Compounce, including ride operator, ride trainer, and assistant ride supervisor.  See Exh. B at 13:15-14:11.  However, in August of 2003, before the conclusion of the 2003 season, Adams voluntarily resigned his employment with Lake Compounce.  See Exh. B at 14:12-25.  He did so by orally notifying park management that he was resigning.  See Exh. B at 14:23-15: 5.  After his resignation in 2003, Adams reapplied for a position at Lake Compounce and returned as a seasonal employee in 2004.  See Exh. B at 22:9-18.  Adams worked at Lake Compounce during the 2004 through 2007 seasons in various capacities, including as an assistant ride coach and a housekeeping supervisor. See Exh. B at 15:14-22. Plaintiff's seasonal employment ended after the 2007 season, and he became a full-time employee in 2008.  See Exh. B at 15:23-16:5.  He held the position of Mechanic Helper for the duration of his full-time employment with Festival Fun Parks. See Exh. B at 16:6-10.

### B.      Plaintiff's Resignation of His Employment With Festival Fun Parks

Although Plaintiff alleges in his Complaint that Festival Fun Parks terminated his employment, at his deposition he testified that he resigned.  See Exh. A at ¶ 28; Exh. B at pp. 87:16-22.  After notifying John Fitch that he intended to give notice, in preparation for leaving Lake Compounce, Plaintiff took all his accrued vacation and holiday pay, a total of two weeks paid leave. See Exh. B at 88:11-14.  Following his return from this two-week leave, Plaintiff met with Jerry Brick and his immediate supervisor, Mario Abela.  See Exh. B at 88:8-10.  At the

meeting, Mr. Brick advised Plaintiff that he had notified the Festival Fun Parks corporate office that Plaintiff was resigning, and they discussed which day would be Plaintiff's last day of work at Lake Compounce.  See Exh. B at pp. 88:22-89:9

At his deposition, Plaintiff admitted that no one at Lake Compounce told him he was being terminated or fired, and he believed that he had resigned his employment with Lake Compounce.  See Exh. B at pp. 89:24-90:5.  After conferring with his counsel at a break during his deposition, Adams modified his testimony to state that he "[r]esigned, because I couldn't deal with it no more, being picked on."  Exh. B at p. 91:8-13.

### C.    Plaintiff's Disability Discrimination Claim

With respect to his disability, Plaintiff alleges that he "suffers from mental retardation." Exh. A at ¶ 7.  At his deposition, Plaintiff testified that he is disabled because it takes him time to do things, and that he has to go at a slower pace to pick things up.  See Exh. B at 105:12-14.   He also testified that he can only read at a fourth grade level or thereabouts, and that he can't remember more than five things at a time.  See Exh. B at 112:17-21.  Notably, this assessment – that Plaintiff reads at a third or fourth grade level of reading – was made when plaintiff was in the fifth grade.  See Exh. B at 119:17-22.  Plaintiff admitted that when this test was administered, that performance was roughly at grade level for the age he was at the time.  See Exh. B at 119:23-25.  He has not undergone any additional testing for his alleged disability.  See Exh. B at 112:19-22.

The only evidence Plaintiff has presented of his disability, other than his own testimony, is an unsworn and unauthenticated report which refers to, but does not include, an assessment of his mental abilities prepared in 1989, along with an individual education plan which appears to

4

have been prepared in 1990; neither of these documents contain any diagnosis of a mental disability.  A copy of these documents is attached hereto as Exhibit D-9 to Exhibit B.

### D.      Plaintiff's Gender Discrimination Claims

Plaintiff bases his gender discrimination claims on his general allegation that he "got treated and picked on, [and] no one else got the same treatment."  See Exh. B at 90:6-13.  The only instance of "getting picked on" that Plaintiff identifies in support of his gender discrimination claims is Justin Walters' alleged statement that Plaintiff being on his knees was the best position for him.  See Exh. B at 92:21-93:4.  Plaintiff alleges Mr. Walters made this remark because, like Mr. Walters at the time, Plaintiff wasn't married and didn't have a girlfriend.  See Exh. B at 93:5-10; 95:5-13.

### E.      Plaintiff's Sexual Harassment Claims

Plaintiff bases his sexual harassment/hostile work environment claim on some of the same conduct which is the basis for his disability and gender discrimination claims.  Specifically, he alleges that he was sexually harassed by Justin Walters, who allegedly told Plaintiff that he liked being on his knees because that was the best position for him, and that Mr. Walters had told him that he "had" his mother and she was good.  See Exh. B at 97:2-4; see Plaintiff's Response to Interrogatory No. 9 of Defendant's First Set of Interrogatories, a copy of which is attached hereto as Exhibit D.

### F.      Plaintiff's Retaliation Claims

Plaintiff alleges in his Complaint that his employment was terminated in retaliation for his complaints of sexual harassment and disability discrimination.  See Exh. A at ¶ 79.

IV.   **ARGUMENT**

A.   **Legal Standard For Grant Of Summary Judgment**

Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  Summary judgment is properly entered against "the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992), cert. denied, 506 U.S. 965 (1992).  A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must "designate specific facts showing that there is a genuine issue for trial."  Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.")

In order to defeat a summary judgment motion, "the party opposing summary judgment…must set forth 'specific facts' demonstrating that there is a genuine issue for trial."  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  A party opposing summary judgment "may not  rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P.

56(e), or conclusory allegations or unsubstantiated speculation. <u>Scotto v. Almenas</u>, 143 F.3d 105, 114 (2d Cir. 1998). Stated differently, "some metaphysical doubt as to the material facts" is insufficient to defeat a claim for summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

### B. Summary Judgment Should Be Granted Because Plaintiff Has Failed To Establish A Prima Facie Case Of Discrimination.

When analyzing claims under the ADA, the CFEPA, and Title VII, the Court applies the three part burden-shifting framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>See</u> <u>Sample v. Wal-Mart Stores, Inc.</u>, 273 F. Supp. 2d 185, 188 (D. Conn. 2003) (holding that the <u>McDonnell Douglas</u> burden shifting analysis applies to actions for disability discrimination brought under the ADA and the CFEPA and that the legal analysis of these claims is identical); <u>Crocco v. Advance Stores Inc.</u>, 421 F. Supp. 2d 485, 495 (D. Conn. 2006) (holding that legal analysis for CFEPA and Title VII sexual harassment hostile work environment claims is coextensive and applying <u>McDonnell Douglas</u> to jointly evaluate claims); <u>Byra-Grzegorczyk v. Bristol-Myers Squibb Co.</u>, 572 F. Supp. 2d 233, 242 (D. Conn. 2008) (holding that "analysis is the same" for Title VII and CFEPA gender discrimination claims). All the claims contained in Plaintiff's Complaint are subject to the three part burden-shifting analysis outlined in <u>McDonnell Douglas</u>.

Under <u>McDonnell Douglas</u>, the plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. <u>See, e.g.,</u> <u>Farias v.</u>

<u>Instructional Sys.</u>, 259 F.3d 91, 98 (2d Cir. 2001). If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. <u>See</u> <u>id.</u> If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant "will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." <u>James v. N.Y. Racing Ass'n</u>, 233 F.3d 149, 154 (2d Cir. 2000). The plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 143 (2000).

The first prong of the three part analysis is a determination of whether the plaintiff has met his initial obligation to establish a <u>prima</u> <u>facie</u> case of discrimination. <u>See, e.g.</u>, <u>Mario v. P & C Food Markets, Inc.</u>, 313 F.3d 758, 767 (2d Cir. 2002). If a plaintiff fails to establish a <u>prima</u> <u>facie</u> case of discrimination, summary judgment in favor of the defendant is appropriate. <u>See, e.g.</u>, <u>Paulino v. N.Y. Printing Pressman's Union, Local Two</u>, 301 Fed. Appx. 34, 37 (2d Cir. 2008).

## 1. Plaintiff Has Failed To Establish A <u>Prima</u> <u>Facie</u> Case That Festival Fun Parks Discriminated Against Him In Violation of The ADA or The CFEPA.

Under the <u>McDonnell Douglas</u> burden shifting framework, Plaintiff must establish a <u>prima</u> <u>facie</u> case of discrimination under the ADA and the CFEPA by showing that: "(1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable

accommodation; and (4) he suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).  See also Lovell v. United Airlines, Inc., 728 F. Supp. 2d 1096, 1107 n.8 (D. Hawaii 2010) (holding that the 2007 amendments to the ADA did not disturb the elements of a prima facie case for disability discrimination).  The final prong of the prima facie case requires that Plaintiff establish that he suffered an adverse employment action "**because of** his disability." Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir. 2000) (emphasis added).

Plaintiff has failed to establish a cause of action for disability discrimination because (1) Plaintiff has not put forth evidence that could support a  finding that he suffers from a disability within the meaning of the ADA; (2) Plaintiff cannot demonstrate he suffered an adverse employment action as a result of Festival Fun Parks' alleged discriminatory acts; and (3) Plaintiff cannot demonstrate that he suffered an adverse employment action (if one did exist) because of his alleged disabilities.  Therefore, Festival Fun Parks is entitled to judgment in its favor as to Plaintiff's claim of disability discrimination.

> **a.    Plaintiff Cannot Demonstrate That He Suffers From A Disability Within The Meaning of The ADA or The CFEPA.**

Plaintiff must demonstrate that he is disabled within the meaning of the ADA and the CFEPA.  Under the ADA, an individual may show that he suffers from a disability in three ways: (1) the person suffered from an actual physical or mental impairment that substantially limits one or more major life activity; (2) the person has a record of such impairment; or (3) the individual has been regarded as having such an impairment.[2]  42 U.S.C. §12102.  In this case, Plaintiff has

---

[2]    Plaintiff has not alleged discrimination based on the theory that he has a record of a disability and, as a result, Defendant does not address the viability of such a claim.  See generally Exh. A.

produced no evidence that he suffers from a mental disability, even under the CFEPA's comparatively broad definition of "disability." See Martinez v. Conn. Library, 2011 U.S. Dist. LEXIS 107848, *72-73 (D. Conn. 2011).

Plaintiff alleges in his Complaint that he suffers from mental retardation. See Exh. A at ¶ 15. At his deposition, Plaintiff testified that he is disabled because it takes him time to do things, that he has to go at a slower pace to pick things up. See Exh. B at 105:12-14. He also testified that he was found to read at a third or fourth grade level when he was in approximately fifth grade. See Exh. B at 119:17-25. In support of his claim that he is disabled for purposes of the ADA and the CFEPA, Plaintiff produced an unsworn summary of an educational plan that appears to have been prepared in 1990. See Exhibit D-9 to Exh. B. The educational plan refers to an analysis undertaken by a Dr. Cynthia Neidbala in approximately 1990. See id. Plaintiff has not produced a copy of Dr. Neidbala's report, or provided any other support for his allegation that he is mentally disabled. [3]

Plaintiff's failure to present any evidence that could substantiate a finding that he is disabled for purposes of the ADA or the CFEPA is fatal to his prima facie case. "Courts in the Second Circuit have consistently held that when a plaintiff fails to offer any medical evidence substantiating the specific limitations to which he claims he is subject due to his conditions, he cannot establish that he is disabled within the meaning of the ADA." Buotote v Illinois Tool Works, Inc., 2011 U.S. Dist. LEXIS 97850, *19, No. 3:09-cv-2144 (JBA) (D. Conn. August 30, 2011), citing Baerga v. Hosp. for Special Surgery, 2003 U.S. Dist. LEXIS 17201, *6. No. 97-

---

[3]    To the extent he contends Dr. Niedbala is an expert witness, Plaintiff may not rely on Dr. Niedbala's "opinion" to establish he is disabled because he has not submitted the expert report required by Fed. R. Civ. P. 26(a)(2). The deadline for disclosure of expert reports was October 1, 2011. See July 5, 2011 Scheduling Order Regarding Case Management Plan (D.E. No. 10).

CIV-0230 (DAB) (S.D.N.Y. Sept. 30, 2003); see also Douglas v. Victor Capital Group, 21 F.Supp.2d 379, 392 (S.D.N.Y. 1998) ("Plaintiff's testimony as to the (alleged) limits on his ability to walk, without supporting medical testimony, simply is not sufficient to establish a prima facie case under the ADA."). Quite simply, Plaintiff cannot rely on his own conclusory assertions to establish his prima facie case that he is disabled.[4]

Nor can Plaintiff rely upon unsworn summary reports to substantiate his claim that he is disabled. Unsworn reports such as the education plan prepared for him when he was in the fourth grade are hearsay, and therefore cannot be considered for purposes of summary judgment. See, e.g., Fall v. New York State United Teachers, 289 Fed. Appx. 419 (2d Cir. 2008) ("[t]he unsworn audiologist reports offered by [plaintiff] constitute inadmissible hearsay evidence); Weltz v. City of New York, 2004 U.S. Dist. LEXIS 17036, *5, No. 99-Civ.-3932 (RCC) (S.D.N.Y. August 25, 2004) (unsworn doctor's letters are inadmissible hearsay and may not properly be considered in opposition to a motion for summary judgment); Raskin v. Wyatt Co., 125 F.3d 55, (2d Cir. 1997) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").

Not only has Plaintiff failed to establish that he suffers from an actual disability, but there is also no evidence that Plaintiff was regarded as disabled under the ADA.[5] "To prove a 'regarded as' claim under the post-amendment version of the ADA, plaintiff must show he was

---

[4]   The fact that CFEPA defines "disability" more broadly than the ADA does not obviate Plaintiff's obligation to put forth medical evidence in order to make a prima facie case. See Buotote, 2011 U.S. Dist. LEXIS 97850, *20, finding that while the CFEPA applies more broadly than the ADA, the evidentiary standards are the same, and concluding that "the need for corroborating evidence of disability under the ADA is also required under the CFEPA."

[5]   While Plaintiff has not pled a "regarded as" disability discrimination claim – and therefore has arguably waived a disability claim on this theory – Festival Fun Parks nevertheless addresses the viability of such a claim in the event that Plaintiff contends that he has pled this claim.

'subjected to an action prohibited under the (ADA) because of an actual or perceived physical or mental impairment whether or not the impairment limits a major life activity." <u>Wurzel v. Whirlpool Corp.</u>, 2010 U.S. Dist. LEXIS 36635, at *20 , No. 3:09-CV-498 (N.D. Ohio. Apr. 14, 2010) (<u>quoting</u> 42 U.S.C. § 12102(3)(A)).   In addition, "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate . . . that the employer regarded the employee as disabled . . . Plaintiff must show that defendants perceived his impairment as substantially limiting the exercise of a major life activity." <u>Piascyk v. City of New Haven</u>, 64 F. Supp. 2d 19, 32 (D. Conn. 1999), <u>citing</u> <u>Reeves</u>, 140 F.3d at 153.  Plaintiff cannot establish that Festival Fun Parks regarded him as disabled or subjected him to prohibited action because of this perceived disability. To the extent Plaintiff has asserted a claim for "regarded as" disability discrimination, that claim, too, lacks the necessary evidentiary support to make a prima facie case of disability discrimination.  See <u>Piascyk</u>, 64 F. Supp. 2d at 32-34 (holding that plaintiff had not established he was "regarded as" disabled by his employer when the only supporting evidence to support plaintiff's claim was doctor's reports and his own testimony on defendant's knowledge of his disability).

In short, Plaintiff has not met his burden of production to establish that he is disabled for purposes of the ADA or the CFEPA.  On this basis alone, Festival Fun Parks is entitled to summary judgment on Plaintiff's disability claims.

### b.    Plaintiff Cannot Demonstrate That He Suffered an Adverse Employment Action Because of His Disability.

As noted above, the fourth prong of the <u>prima</u> <u>facie</u> disability discrimination case requires that Plaintiff suffer an adverse employment action because of his disability.  See, e.g., <u>Giordano</u>, 274 F.3d at 747 (2d Cir.2001).  Plaintiff, however, has failed to demonstrate that he suffered an

adverse employment action – whether by the termination of his employment, actually or constructively, or by a failure to transfer.

In the Second Circuit, in order to establish he has suffered an adverse employment action, Plaintiff must show that he has endured a materially adverse change in the terms and conditions of employment.  See, e.g., Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. See id.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, or significantly diminished material responsibilities. See id.

### i.     Plaintiff's Employment With Festival Fun Parks Was Not Terminated.

First and foremost, Plaintiff testified at his deposition that he voluntarily resigned his employment with Festival Fun Parks; his employment was not terminated.  See Exh. B at 89:24-90:5.  There can be no factual dispute over this issue when the Plaintiff himself admits that his employment was not actually terminated.  Indeed, Plaintiff repeatedly testified at his deposition that he had resigned, and that his employment had not been terminated.  Id.; see Exh. B at 91:11-13, 91:20-92:17.

### ii.    Plaintiff Was Not Constructively Discharged From His Employment With Festival Fun Parks.

While Plaintiff admitted that he had resigned his employment, he later modified his testimony to suggest he had been forced to resign.  After conferring with his counsel at a break during his deposition, Plaintiff testified that he was forced to resign as a result of the alleged discriminatory conduct, apparently claiming that he had been constructively discharged.  Exh. B

at pp. 91:8-13, 92:11-12.  On this point, Plaintiff testified that he "[r]esigned, because I couldn't deal with it no more, being picked on."  Exh. B at p. 92: 11-12.

In order to establish that he was constructively discharged, and therefore that he suffered the adverse employment action that is required to state a <u>prima facie</u> claim, Plaintiff must satisfy the constructive discharge standard under Connecticut law.   The Supreme Court of Connecticut utilizes the same definition of constructive discharge as the Second Circuit Court of Appeals.  <u>See, e.g.</u>, <u>Brittell v. Dep't of Corr.</u>, 247 Conn. 148, 178, 717 A.2d 1254 (1998).  To establish a claim of constructive discharge, a plaintiff must show that "an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee  to quit involuntarily." <u>Chertkova v. Conn. Gen. Life Ins. Co.</u>, 92 F.3d 81, 89 (2d Cir. 1996). A plaintiff must satisfy two prongs of this standard by showing: (1) the employer's conduct was intentional, and (2) working conditions had reached an intolerable level.   <u>See</u> <u>Petrosino v. Bell Atl.</u>, 385 F.3d 210, 229 (2d Cir. 2004).  For working conditions to be judged intolerable, they must be "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." <u>Chertkova</u>, 92 F.3d at 89.  Whether working conditions are intolerable "is based on an objective standard of whether a reasonable person in the employee's position would have felt compelled to resign.  An employee's subjective opinion that his or her working conditions are intolerable is not sufficient to establish constructive discharge." <u>Murphy v. BeavEx</u>, 544 F. Supp. 2d 139, 153 (D. Conn. 2008) (<u>citing</u> <u>Goldfarb v. Town of West Hartford</u>, 474 F. Supp. 2d 356, 374 (D. Conn. 2007)).

Plaintiff presents insufficient evidence to support a finding that the alleged discriminatory conduct that occurred at Lake Compounce was "so difficult and unpleasant" that a reasonable person would have felt compelled to resign.  Indeed, this conclusion is buttressed by the fact that

Plaintiff testified at his deposition that the type of conduct about which Plaintiff allegedly complained to management – the occasional off-color comment and criticism of his performance – was not unusual in the mechanic's shop where he worked.  See Exh. B at 99:9-21.  This type of conduct does not create an intolerable working environment.  See, e.g., Goldfarb, 474 F. Supp. 2d at 374 (D. Conn. 2007) (holding that a co-worker's "overly critiquing" comments of plaintiff's work is not sufficient to show constructive discharge).  Further, Plaintiff's claim that his working conditions were intolerable is contradicted by his own behavior -- Plaintiff admits to engaging in workplace banter of a sexual nature, including approaching a female co-worker named Brynn Goldbeck and asking her if "she wanted to go to bed."  See Exh. B at 80:18-22.

Nor can Plaintiff present any evidence that Festival Fun Parks intentionally created the allegedly intolerable atmosphere.  See Wilburn v. Fleet Fin. Group, Inc., 170 F. Supp. 2d 219, 239 (D. Conn. 2001) (finding employee had not been constructively discharged because "she has not presented, as she must, any evidence suggesting that her supervisors' handling of the situation "was part of a *deliberate* attempt to make her working conditions intolerable.") (emphasis in original).  Plaintiff can present no evidence that Festival Fun Parks acted with the intent to create an intolerable work environment, and the alleged failure of Festival Fun Parks management to properly address his complaints is not the type of conduct the Second Circuit considers "intentional."  See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 74 (2d Cir. 2000)  ("ineffective or even incompetent . . . handling of [complaints] . . . does not rise to the level of deliberate action required...").

       **iii.**    **The Alleged Failure to Transfer Plaintiff To The Paint Shop Does Not Qualify As An Adverse Employment Action.**

Finally, Plaintiff has alleged that he requested a transfer to the paint shop and was not transferred.  A failure to transfer may constitute an adverse employment action under certain circumstances.  See Nonnenmann v. City of New York, 174 F. Supp. 2d 121, 132 (S.D.N.Y. 2001). Where "the change in position would have resulted in a significant change in duties and could potentially lead to increased opportunities for advancement," courts have held a failure to transfer to constitute an adverse employment action.  Belch v. Jefferson County, 108 F. Supp. 2d 143, 154 (N.D.N.Y. 2000).

Here, Plaintiff can offer no evidence that a transfer to the paint shop would have led to increased opportunities for advancement, or even an increase in salary, wages, or other remuneration.  Further, Plaintiff admits that he is aware of no open position in the paint shop at the time he inquired about possibly transferring there.  See Exh. B at 84:13.  While Plaintiff testified that he thought "there was a lot of things that had to get done that year" in the paint shop, see Exh. B at 86:18-19, he admitted that he had no knowledge of any additional staff being added to the paint shop in 2009.  See Exh. B at 86:20-23.  In fact, there were no open positions at the time Plaintiff resigned his employment at Lake Compounce, nor have there been since.  See Exh. C at ¶¶ 4 – 5.

The failure to create a position for a disgruntled employee generally does not rise to the level of an adverse employment action.  See, e.g., Williams v. R.H. Donnelley, Inc., 199 F. Supp. 2d 172, 178 (S.D.N.Y. 2002).  While courts have recognized that failure to create a position can constitute adverse employment action when a position is promised but never created, see Brooks v. Hevesi, 1998 U.S. Dist. LEXIS 730, *2 n.2, No. 95-Civ.-3209 (JSM) (S.D.N.Y. January 27, 1998), that is not the case here.  Plaintiff has not produced, and cannot present, any evidence that he was promised a transfer to the paint shop.  No open position existed, and the law does not

16

require that a position be created for him. On these facts, Plaintiff cannot establish that Festival Fun Parks' decision not to transfer him to the paint shop constituted the "material adverse employment action" required to state a claim.

As a result of the foregoing, Defendant is entitled to summary judgment in its favor as to Plaintiff's disability discrimination claim because Plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of disability discrimination.

**2.      Plaintiff Cannot Establish A <u>Prima Facie</u> Case of Sexual Harassment Under Title VII or The CFEPA.**

Plaintiff asserts claims for sexual harassment/hostile work environment under Title VII and the CFEPA.  The analysis of discrimination and retaliation claims under the CFEPA is the same as under Title VII.   As with Plaintiff's disability discrimination claims, the Title VII and the CFEPA discrimination claims are both analyzed under the <u>McDonnell Douglas</u> burden-shifting analysis.  <u>See, e.g.</u>, <u>Hall v. Family Care Home Visiting Nurse & Home Care Agency, LLC</u>, 696 F. Supp. 2d 190, 198 (D. Conn. 2010).

In order to maintain a hostile work environment claim under Title VII and the CFEPA, Plaintiff must establish the following <u>prima</u> <u>facie</u> case: (1) the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of his work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.  <u>See</u> <u>Jamilik v. Yale University</u>, 362 Fed. Appx. 148, 151 n.2 (2d Cir. 2009) (noting that "CFEPA claims are governed by the same standards applicable to Title VII claims," and analyzing CFEPA and Title VII sexual harassment claims coextensively).

In making the determination of whether the employer's conduct was sufficiently severe, courts consider the frequency of the discriminatory conduct; its severity; whether it is physically

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance as factors for determining whether a hostile work environment exists. Kaytor v. Elec. Boat Corp., 609 F.3d 537, 547 (2d Cir. 2010) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

In addition, a hostile work environment claim requires proof that the work environment was both subjectively and objectively hostile. See, e.g., DeSalvo v. Volhard, 312 Fed. Appx. 394, 396 (2d Cir. 2009); Faragher v. Boca Raton, 524 U.S. 775, 787 (1998). To show the latter, "a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." DeSalvo, 312 Fed. Appx. at 396, citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000). Plaintiff's allegations fall far short of the standard set forth in Quinn because he neither points to any conduct that is discriminatory on the basis of his sex, nor does he indicate that any severe conduct has occurred. Plaintiff has not alleged and cannot establish the requisite elements of a hostile work environment claim and, therefore, Defendant is entitled to summary judgment.

Plaintiff alleges generally in his Complaint that he was repeatedly subject to sexual harassment by his co-worker that was repetitious and continuous. See Exh. A at ¶ 62. At his deposition, Plaintiff testified that Justin Walters, a co-worker, told Plaintiff once that Plaintiff liked being on his knees, and that being on his knees was the best position for him. See Exh. B at 97:2-4; see Exh. A at ¶ 17. Plaintiff also testified that Mr. Walters sexually harassed him by "constantly staring me down, when I'm down on my knees working on my rides, just staring at me." Exh. B at p. 97:9-11. Plaintiff also alleges in his Complaint that Mr. Walters stated to Plaintiff that he "had" Plaintiff's mother and that she was good (although he did not cite this as

an example of harassing conduct at his deposition).  See Exh. A at ¶ 19.  These are the sum-total of Plaintiff's allegations that support his claim for a hostile work environment that could possibly be interpreted as comments of a sexual nature.

The alleged comments of a sexual nature are limited and, while they may have been subjectively perceived as offensive by Plaintiff, were isolated.  These allegations are not the "pervasive and regular...harassment" necessary to establish a hostile work environment claim. See, e.g., Faragher, 524 U.S. at 787 n.1 (harassment must be more than episodic, but must be continuous and concerted in order to be considered pervasive) (citing Carero v. New York City Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989); Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment.").

Furthermore, Plaintiff has entirely failed to demonstrate that the alleged discrimination would have detrimentally affected a reasonable person of Plaintiff's gender and position.  See generally Exhibit A.   In order for Festival Fun Parks' alleged conduct to be actionable, a reasonable person must find such actions hostile or abusive.  See Faragher, 524 U.S. at 787 (holding that even the "mere" use of a "racial epithet which engenders offensive feelings in an employee" does not violate Title VII).

Moreover, Plaintiff cannot rely on alleged harassing comments of his co-workers that were of a non-sexual nature, such as calling him "stupid" and throwing things at him, to support his hostile work environment sexual harassment claim.  See, e.g., Perry v. Ethan Allen, Inc., 115 F.3d 143, 148 (2d Cir. 1995) (affirming grant of summary judgment on sexual harassment claim on grounds that the "few instances of harassment which . . . [plaintiff] recounted were not of a sexual nature."); see also DeSalvo, 312 Fed. Appx. at 396 (finding that multiple alleged insults

by co-workers that concerned work-related issues and did not concern Plaintiff's protected status were insufficient to create hostile work environment).  The alleged comments and insults made by co-workers were made infrequently, were not of a sexual nature other than one or, at most, two discrete comments, and in no event were they the "severe and pervasive" comments necessary to create a hostile work environment.

3.   **Plaintiff Cannot Establish A <u>Prima Facie</u> Case of Gender Discrimination Under Title VII or The CFEPA.**

Claims for gender discrimination are also addressed under the <u>McDonnell Douglas</u> three part burden-shifting analysis.  <u>See</u> <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 217 (2d Cir. 2005).  Adams must therefore make a prima facie case of gender discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class.  <u>See</u> <u>id.</u>  Plaintiff's gender discrimination claim is based on his allegation that Festival Fun Parks discriminated against him "because [he] did not act more masculine [and] thus did not fit a stereotype of his gender."  Exh. A at ¶ 50(f), 56(f).

The U.S. Supreme Court has recognized that a claim under Title VII exists for failure to conform to gender stereotypes.  <u>See</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 251 (1989).  While courts have rarely found such discrimination to exist, the Second Circuit has held that a plaintiff can "fail to conform" to gender stereotypes in two ways: (1) through behavior or (2) through appearance. <u>See</u>  <u>Dawson v. Bumble & Bumble</u>, 398 F.3d at 217.

The only specific fact that Adams alleges related to his gender discrimination claim is based on his behavior.  Specifically, at his deposition, Adams testified that he was treated differently because he was not married and did not go on dates. See Exh. B at 93:5-10, 94:24-95:3.

Adams' gender discrimination claims must fail for the same reason his disability discrimination and sexual harassment claims fail:  he has not suffered any adverse employment action.  Even assuming *arguendo* that Adams could establish an adverse employment action, he can put forth no evidence that this action was taken because of his failure to conform to gender stereotypes.

### 4.	Plaintiff Cannot Establish A Prima Facie Case of Retaliation Under Title VII or The CFEPA.

Plaintiff claims that Festival Fun Parks violated the CFEPA by retaliating against him on the basis of his alleged disabilities. Although Plaintiff does not assert a claim of retaliation under the ADA, courts in the Second Circuit have held that retaliation claims under the ADA and the CFEPA are analyzed in the same manner.  See Gomez v. Laidlaw Transit, Inc., 455 F. Supp. 2d 81, 90 (D. Conn. 2006).  Therefore, in order to state a prima facie retaliation claim under the CFEPA, the Plaintiff must establish (1) he was engaged in protected activity; (2) the alleged retaliator knew that plaintiff was involved in protected activity; (3) an adverse decision or course of action was taken against plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  See Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 148-49 (2d Cir. 2002). Retaliation claims are analyzed under the same burden-shifting framework established for Title VII cases.  See Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).

Plaintiff cannot make out a prima facie case because he cannot identify a legally recognized adverse employment action that was taken against him.  For the reasons set forth in Section IV.B.1.b, <u>supra</u>, Plaintiff never suffered an adverse employment action.  His employment was not terminated, he was not denied a transfer to an open position, and his employment with Festival Fun Parks was not constructively terminated.

Even if he could identify a recognized adverse employment action, Plaintiff cannot put forth any evidence of a causal connection between the protected activity and the alleged adverse action.  The absence of evidence of such a connection warrants the entry of summary judgment on a disability retaliation claim.  <u>See</u> <u>Rosinski v. Am. Axle & Mfg., Inc.</u>, 402 Fed. Appx. 535, 538 (2d Cir. 2010) (plaintiff's claims under the ADA dismissed because "she did not provide any evidence that any of the adverse actions taken against her had anything to do with any disability she may have had or have been perceived to have").  As a result, Plaintiff cannot establish the third element of his <u>prima</u> <u>facie</u> CFEPA retaliation claim.  Therefore, Festival Fun Parks is entitled to summary judgment in its favor as to Plaintiff's retaliation claim because Plaintiff has failed to establish a <u>prima</u> <u>facie</u> case of retaliation under the CFEPA.

### C.   Festival Fun Parks Can Fulfill Its Burden Of Showing A Nondiscriminatory Reason For Its Failure to Transfer Plaintiff to Another Department.

If Plaintiff is found to have met his burden to establish a <u>prima</u> <u>facie</u> case of disability discrimination under the ADA, the CFEPA, and/or Title VII, the second prong of the <u>McDonnell Douglas</u> framework provides that Defendant must "articulate some legitimate, nondiscriminatory reason for the employee's [termination]."  <u>McDonnell Douglas</u>, 411 U.S. at 802.  In fact, the employer "is not required to prove that the articulated reason *actually motivated* its actions."  <u>Farias v. Instructional Sys., Inc.</u>,  259 F.3d 91, 98 (2d Cir. 2001) (emphasis added).

Although Plaintiff cannot meet his burden under the first prong of the <u>McDonnell Douglas</u> analysis, even if that were possible, there can be no genuine issue of material fact as to whether Defendant had a legitimate, non-discriminatory reason for the alleged adverse employment action.  Plaintiff concedes that he resigned, and for the reasons stated above, as a matter of law, his allegation of constructive termination must fail.   Accordingly, the only remaining "adverse employment action" that might be claimed by the plaintiff is that he was not transferred to the paint shop.  That claim, too, must fail for the reasons stated above.  Even if it could withstand summary judgment, there is no genuine issue of material fact as to the reason that he was not transferred:  there was no position open in the paint shop at the time Plaintiff suggested he would be interested in transferring to the paint shop.  <u>See</u> Exh. B, 86:12-14, 20-22 (in which Plaintiff admits that no one told him that there was an open position in the paint shop and that he had no knowledge that Lake Compounce was hiring anyone in the paint department); <u>see also</u> Exh. C at ¶¶ 4 – 6 (confirming that there were no open positions in the paint department at the time and that no full-time positions have been created in that department since the time of Plaintiff's resignation).

It cannot reasonably be disputed that Plaintiff was not transferred to the paint shop because there were no openings at that time.  Therefore, Defendant has fulfilled its burden under the second prong of the <u>McDonnell Douglas</u> analysis by demonstrating a legitimate, non-discriminatory reason for the alleged failure to transfer Plaintiff's employment – the lack of open positions in the paint shop.

      **D.**    **Summary Judgment Should Be Granted Because Plaintiff Cannot Establish That Festival Fun Parks' Legitimate, Non-Discriminatory Reasons Are Pretextual Or That It Possessed Discriminatory Intent.**

After a defendant meets its burden under the second prong of the <u>McDonnell Douglas</u> framework by articulating a legitimate rationale for the adverse action, the burden of production shifts back to the plaintiff to show that the defendant's articulated reason was merely a pretext. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11, (1993).  On a summary judgment motion, this means that the plaintiff must establish a genuine issue of material fact as to whether the employer's reason for the adverse action is false, and as to whether it is more likely than not that a discriminatory reason motivated the employer to make the adverse employment decision. <u>See</u> <u>Lafferty v. Owens, Schine & Nicola, P.C.</u>, 2012 U.S. Dist. LEXIS 5276, *18-19, No. 3:09-cv-1045 (MRK) (D. Conn. January 18, 2012) (<u>citing</u> <u>Gallo v. Prudential Residential Servs., Ltd.</u>, 22 F.3d 1219, 1225 (2d Cir. 1994)).

The third and final prong of the analysis shifts the burden back to the plaintiff "who must now show by a preponderance of the evidence that the employer's explanation is pretextual." <u>See</u> <u>Fuentes</u>, 32 F.3d at 763; <u>see also</u> <u>McDonnell Douglas</u>, 411 U.S. at 804.  The question at this stage is "whether the employer intentionally discriminated . . . . [P]roof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.  In other words, it is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." <u>Heaney v. Fogarty, Cohen, Selby & Nemiroff, LLC</u>, 2005 U.S. Dist. LEXIS 35879, *12, No. 3:03-CV-2008 (MRK) (D. Conn. December 14, 2005), <u>citing</u> <u>Reeves</u>, 530 at 146-147 (emphasis in original).

Plaintiff, however, can offer no evidence that would demonstrate that the legitimate decision not to transfer him to the paint shop should not be believed.  In fact, Plaintiff's alleged disabilities played no part in the decision not to transfer Plaintiff to the paint shop.  <u>See</u> Exh. C at

24

¶ 7.  Nor can Plaintiff establish pretext based on his allegations that discriminatory comments were made regarding his gender.  In fact,  Plaintiff has not (and cannot) put forth any evidence that the alleged comments regarding Plaintiff's compliance with accepted gender norms were related to any of the alleged adverse employment actions he has identified.  Nor can Plaintiff establish pretext based on his allegations that he was sexually harassed by being subject to a hostile work environment.  Plaintiff never complained to anyone at Festival Fun Parks that he was being sexually harassed.  See Exh. B at 102:1-3.

Under the third prong of the McDonnell Douglas framework, Plaintiff has not produced, and cannot produce, any evidence that would suggest that Festival Fun Parks' reasoning regarding its failure to transfer him was fabricated or that Festival Fun Parks intended to discriminate against Plaintiff in any way.  As a matter of law, Plaintiff cannot carry his burden under the third prong of the McDonnell Douglas framework and, therefore, Festival Fun Parks is entitled to judgment in its favor as to all Counts contained in Plaintiff's Complaint.

## V.      CONCLUSION

As a result of the foregoing, Defendant is entitled to Summary Judgment in its favor on all Counts contained within Plaintiff's Complaint.

Respectfully Submitted,

Dated: March 15, 2012                    FISHER & PHILLIPS LLP

                                         /s/ Risa B. Boerner
                                         Risa B. Boerner
                                         Attorney I.D. No. ct28341
                                         James P. McLaughlin
                                         Attorney I.D. No. phv05264
                                         Fisher & Phillips LLP
                                         201 King of Prussia Rd., Suite 650
                                         King of Prussia, PA  19087
                                         Telephone: (610) 230-2150

Facsimile: (610) 230-2151
E-Mail: rboerner@laborlawyers.com
            jmclaughlin@laborlawyers.com

*Attorneys for Defendant Festival Fun Parks,*
*LLC d/b/a Lake Compounce*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 15, 2012, a copy of the foregoing was filed electronically and served electronically on all attorneys and pro se parties of record as listed below.  Notice of this filing will be sent be e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

James V. Sabatini, Esquire
Sabatini and Associates, LLC
1 Market Square
Newington, CT 06111

Attorney for Plaintiff


*/s/ Risa B. Boerner*
Risa B. Boerner