UNITED STATES DISTRICT COURT
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **ANDREW ADAMS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.:  3:11 cv 00427 (JCH)** |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **FESTIVAL FUN PARKS, LLC, d/b/a** | : | |
| **LAKE COMPOUNCE THEME PARK,** | : | |
| | : | |
| **Defendant.** | : | **MAY 4, 2012** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

PLAINTIFF,

By____/s/ James V. Sabatini_____
James V. Sabatini, Esquire      CT 19899
Sabatini and Associates, LLC
One Market Square
Newington, CT  06111
Tel. No.:  860-667-0839
Fax No.:  860-667-0867
e-mail:  jsabatini@sabatinilaw.com

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2012, a copy of the foregoing Motion For Extension of Time to Respond To Defendant's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ James V. Sabatini
James V. Sabatini

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………….   i-iv

I.     INTRODUCTION…………………………………………………….    1

II.    STATEMENT OF FACTS…..………………………………………    3-8

III.   LAW AND ARGUMENT………………………………………….    8

       A.    Legal Standard ……………………………………………..    8

              1.    Summary Judgment...………………………………………    8

              2.    Discrimination Standard……………………………………    9

       B.    Plaintiff Can Establish Prima Facie Cases of Disability Discrimination,
             Sexual Harassment/Hostile-Work Environment, Gender Discrimination
             and Retaliation……………………………………………………    14

              1.    Disability Discrimination under the ADA & CFEPA………    14

              2.    Sexual Harassment/Hostile Work Environment under Title

                    VII & CFEPA…………………………………………….    23

              3.    Gender Discrimination under Title VII & CFEPA…………    27

              4.    Retaliation under Title VII & CFEPA……………………..    32

       C.    Defendant's proffered reason for the adverse employment actions
             were pretext……………………………………………………    35

IV.    CONCLUSION…………………………………………………..    39

## TABLE OF AUTHORITIES

### FEDERAL CASES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)……………………………………...9

Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107
(2d Cir. 2004)………………………………………………………………………....12, 35

Beason v. United Technologies Corp., 337 F.3d 271 (2d Cir.2003)……………………17

Blanco v. Brogan, 620 F. Supp. 2d 546 (S.D.N.Y. 2009)…………………………………33

Bolmer v. Oliveira, 594 F.3d 134 (2d Cir. 2010)………………………………………..12

Butts v. NY City Dept of House Pres. & Dev., 307 Fed. Appx 596 (2009)…………..…13

Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp. 2d 233
(D. Conn. 2008)……………………………………………………………………………33

Capobianco v. City of New York, 422 F.3d 47 (2d Cir. 2005)…………………………15

Carlton v. Mystic Transp., Inc., 202 F.3d 129 (2d Cir. 2000)…………………………...13

Celotex Corp. v. Catreet, 477 U.S. 317 (1986)……………………………………………9

Sedor v. Frank, 42 F.3d 741 (2d Cir. 1994)……………………………………..18-20

D'Amico v. City of New York, 132 F.3d 145 (2d.Cir.1998)……………………………..8

Davis v. State Univ. of New York, 802 F.2d 638 (2d Cir.1986)………………………...33

Dawson v. Bumble & Bumble, 398 F.3d 211 (2d Cir. 2005)………………………..27-28

DeCintio v. Westchester County Med. Center, 821 F.2d 111 (2d Cir.1987)……………33

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)…………………………………..23

Feingold v. New York, 366 F.3d 138(2d Cir. 2004)…………………………10, 23-24, 26

Francis v. City of Meriden, 129 F.3d 281 (2d Cir. 1997)………………………………..16

Gallo v. Prudential Residential Services, Ltd. P'ship, 22 F.3d 1219 (2d Cir. 1994)…12-13

i

Gallo v. Second Taxing District of City Of Norwalk Operating Under The
Name Of South Norwalk Electric And Water, 507 F.Supp.2d 164 (D.Conn.2007)……..11

Giordano v. City of New York, 274 F.3d 740 (2d Cir. 2001)…………………………...14

Gross v. FBL Financial Services, Inc., 129 S.Ct. 2343 (2009)…………………………12

Harris v. Forklift Sys., Inc., 510 U.S. 17 (1993)…………………………………………25

Kessler v. Westchester County Dept. of Soc. Services, 461 F.3d 199 (2d Cir. 2006)…..34

Mack v. Otis Elevator Co., 326 F.3d 116 (2d Cir. 2003)………………………………..23

McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92 (2d Cir. 2009)………21

McDonnell Douglas Corp. v. Green, 411 U.S. 792(1973)……………………9-10, 13, 32

McGuiness v. Lincoln Hall, 263 F.3d 49 (2d Cir.2001)…………………………………11

Mecklenberg v. New York City Off–Track Betting, 42 F.Supp.2d 359
 (S.D.N.Y.1999)…………………………………………………………………...21, 31

Meiri v. Dacon, 759 F.2d 989 (2d Cir.1985)……………………………………………11

Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100 (2d Cir. 1989)….13

Padilla v. Harris, 285 F. Supp. 2d 263 (D. Conn. 2003)………………………………27

Parker v. Columbia Pictures Industries, 204 F.3d 326 (2d Cir. 2000)…….……..12, 18, 20

Perry v. NYSARC, Inc., 424 F. App'x 23 (2d Cir. 2011)………………………………..12

Pimentel v. City of New York, 2002 WL 977535 (S.D.N.Y. 2002)…………………21, 31

Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)…………………………………27-28

Quaratino v. Tiffany & Co., 71 F.3d 58 (2d Cir. 1995)………………………...10-11

Raytheon Co. v. Hernandez, 540 U.S. 44 (2003)…………………………………………9

Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170 (2d Cir. 1996)……………………...34

Reeves v. Sansderson Plumbing Prods., Inc., 530 U.S. 133 (2000)……………..12-13, 35

Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426 (2d Cir.1999)………23

Sedor v. Frank, 42 F.3d 741 (2d Cir. 1994)……………………………………………...17

Shain v. Ctr. for Jewish History, Inc., 418 F. Supp. 2d 360 (S.D.N.Y. 2005)…………...13

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)………………………………..12, 35

Stratton v. Dept. for the Aging for the City of New York, 132 F.3d 869
 (2d Cir.1997)…………………………………………………………………………...11-12

Taylor v. Local 32E Serv. Employees Int'l, Union, 286 F. Supp. 2d 246
(S.D.N.Y. 2003) aff'd sub nom. Taylor v. Local 32E Serv. Employees Int'l Union,
118 F. App'x 526 (2d Cir. 2004)……………………………………………………..10-11

Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)…………………………11

Terry v. Ashcroft, 336 F.3d 128 (2d Cir.2003)…………………………………23, 32, 34

Weinstock v. Columbia Univ., 224 F.3d 33 (2d Cir.2000)……………………………9-10

Weixel v. Bd. Of Educ. Of the City of N.Y., 287 F.3d 138 (2d Cir. 2002)……………...33

Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219 (D.Conn. 2001)……….21, 31

Zubrow v. Solvay Pharms, Inc., 207 Fed.Appx. 37 (2d Cir.2006)……………………….9

**STATE CASES**

Dzubaty v. Milford Bd. of Educ., CV065000824S, 2007 WL 2570413
(Conn. Super. Ct. Aug. 20, 2007)……………………………………………………17

**FEDERAL STATUTES**

42 U.S.C. § 12101 *et seq*...………………………………………………...2-3, 14-16

42 U.S.C. § 2000e-2……………………………………………………………………….2

**STATE STATUTES**

Conn. Gen. Stat. 46a-60(a)(1) *et seq*...……………………………………...2-3, 17

iii

**MISCELLANEOUS**

10A Charles Alan Wright et al., *Federal Practice & Procedure* § 2722,
at 384-85 (3d ed. 1998)…………………………………………………………………..15

iv

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ANDREW ADAMS,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No.:  3:11 cv 00427 (JCH)** |
| | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **FESTIVAL FUN PARKS, LLC, d/b/a** | : | |
| **LAKE COMPOUNCE THEME PARK,** | : | |
| | : | |
| **Defendant.** | : | **MAY 4, 2012** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**OBJECTION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff submits his Memorandum of Law in Support of his Objection to

Defendant's Motion for Summary Judgment.  As set forth below, genuine issues of

material fact exist and the defendants are not entitled to judgment as a matter of law.

Specifically, plaintiff objects on the grounds that the defendant discriminated against the

plaintiff on the basis of his disability and/or gender, sexually harassed the plaintiff,

terminated him on the basis of disability and/or gender and retaliated against him. Filed

with and supporting plaintiff's Objection is plaintiff's Local Rule 56(a)(2) Statement,

Affidavits of James V. Sabatini, Esq., and Andrew Adams, deposition testimony and

exhibits.

In brief, the plaintiff, Andrew Adams ("plaintiff" or "Adams") was hired full-time by the Defendant, Festival Fun Parks, LLC d/b/a Lake Compounce Theme Park ("Lake Compounce" or "defendant") in May 2008.  While employed, the plaintiff was subjected to various comments and treatment outlined herein regarding his disability and gender that were offensive and discriminatory in nature.  On October 31, 2009, the plaintiff was constructively terminated.

Plaintiff filed charges with the CHRO and EEOC on February 22, 2010.  Plaintiff received a release of jurisdiction from the CHRO on December 29, 2010.  (Exhibit 1 to the Amended Complaint, attached hereto as Ex. 7).

On March 16, 2011, plaintiff brought a complaint against Lake Compounce and subsequently amended the complaint on October 6, 2011 (attached hereto as Exhibit 7). The complaint alleges disability discrimination in violation of the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Count One); Disability Discrimination in Violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60(a)(1) *et seq.*  ("CFEPA") (Count Two); Gender Discrimination in Violation of CFEPA (Count Three); Gender Discrimination in Violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 ("Title VII") (Count Four); Hostile Work Environment in Violation of Title VII (Count Five); Hostile Work Environment in Violation of CFEPA (Count Six); Retaliation in Violation of CFEPA (Count Seven); and Retaliation in Violation of Title VII (Count Eight).

The defendants have moved for summary judgment.  The plaintiff objects to summary judgment on the grounds that genuine issues of material fact exists.  Specifically, summary judgment should be denied for three reasons:

1.      Plaintiff is disabled within the meaning of the ADA and CFEPA, and as such can establish a prima facie case for disability discrimination.

2.      Plaintiff has suffered adverse employment actions, including being sexually harassed at work, discriminated against on the basis of his disability and gender, being terminated on the basis of his disability and/or gender, and being retaliated against.

3.      Plaintiff's proffered non-discriminatory reason for termination is a pretext for discrimination and retaliation.

## II.     STATEMENT OF FACTS

Plaintiff, male, suffers from a slight mental retardation.  Adams Dep. 111:10-12, 112:9-10, Ex. 1; Adams Affidavit ¶¶ 1-2, Ex. 2; Exhibit 4.  Plaintiff's disability causes him to be a slow learner and to have difficulty remembering many things.  Adams Dep. 105:12-14, Ex. 1; Adams Affidavit ¶ 3, Ex. 2; Exhibit 4.

Plaintiff commenced working at Lake Compounce as a seasonal worker in 1997, and continued to be a seasonal worker through 2007.  Adams Dep. 12:6-14:15, 15:14-16:10, Ex. 1; Adams Affidavit ¶ 4, Ex. 2.

In 2008, the plaintiff was hired as a full-time employee as a mechanic or maintenance helper.  Adams Dep. 16:2-7, Ex. 1; Adams Affidavit ¶ 5, Ex. 2.  As a mechanic helper, the plaintiff's job was supposed to be assisting mechanics, but he often did jobs on his own, and still received mechanic helper pay.  Adams Dep. 123:2-124:24, 126:13-23, Ex. 1; Adams Affidavit ¶ 6, Ex. 2.

At Lake Compounce, John Fitch was plaintiff's supervisor, Mario Abela was also a supervisor ahead of Fitch, and Jerry Brick was the general manager.  Adams Dep. 17:11-17, 24:14-15, Ex. 1; Adams Affidavit ¶ 7, Ex. 2.  John Fitch and Jerry Brick at Lake Compounce both knew of plaintiff's disability as a slow learner because plaintiff informed them of the same when he was hired and being trained.  Adams Dep. 21:16-22:5, 24:16-25:4, Ex. 1; Adams Affidavit ¶ 8, Ex. 2.

While a full-time employee, the plaintiff was subject to sexual harassment and discrimination at work.  Adams Affidavit ¶ 9, Ex. 2.  The following is a summary of events:

1.  In February & July 2009, Justin Walters, told the plaintiff, while working on his knees, that the plaintiff should get down on his knees because being on my knees was my best position because he liked men.  Walters also stared the plaintiff down while the plaintiff worked on his knees.  The plaintiff told John Fitch, about this comment.  Fitch said that he informed the plaintiff that while working in the shop the plaintiff would get harassed and picked on and that

Fitch didn't want the plaintiff complaining to him.  Fitch told the plaintiff to "be a man" and be tough.  Adams Dep. 40:20-25, 42:2-6, 61:4-14, 97:2-11, Ex. 1; Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

2. In June 2009, Justin Walters told the plaintiff that he "had" the plaintiff's mother last night and that she was good.  Adams Affidavit, ¶ 11, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3.

3. On June 2, 2009, plaintiff could not find his blowtorch.  When plaintiff found it in the shop, someone had written next to his name "sucks" in black permanent marker.  The plaintiff informed John Fitch and Mike Hayes, in HR, of this incident.  Adams Dep. 103:21-104:18, 167:21-25, Ex. 1; Adams Affidavit, ¶ 12, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

4. In July 2009, Justin Walters through nuts and bolts at the plaintiff.  When they landed in the parts washer, the fluid splashed onto the plaintiff.  Adams Dep. 39:6-40:9, Ex. 1; Adams Affidavit, ¶ 13, Ex. 2; Answers to Interrogatories, #13, Ex. 3.

5. In September 2009, Justin Walters threw an apple at plaintiff's truck.  The plaintiff told John Fitch about this, but Fitch did not reprimand Walters or do anything about it.  Adams Dep. 38:4-39:1, 61:4-25, 169:11-170:19; Adams Affidavit, ¶ 14, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

6. In October 2009, Justin Walters told the plaintiff that he was stupid and said "what the heck is wrong with you?"  This comment was unwelcome and offensive.  Adams Dep. 39:15-23, 97:5-8, 169:20-169:3, Ex. 1; Adams Affidavit, ¶ 15, Ex. 2; Ex. 6.

After speaking with John Fitch about many of these events, the plaintiff spoke with supervisor Mario Abela in July and August of 2009 about the harassment and discrimination by Walters and was told to give the guy a chance, that he wasn't so bad. Adams Dep. 62:12-18. 63:14-64:18, 168:20-169:7, Ex. 1; Adams Affidavit, ¶ 16, Ex. 2; Answers to Interrogatories, #10, 12, 14, Ex. 3; Exhibit 6.

Plaintiff's supervisors never ended the sexual harassment or discrimination that was created by plaintiff's co-workers.  Adams Dep. 90:23-91:7, Ex. 1; Adams Affidavit ¶ 26, Ex. 2.  The daily harassment and discrimination caused the plaintiff embarrassment. Adams Dep. 129:2-7, Ex. 1; Adams Affidavit ¶ 27, Ex. 2.  The harassment and discrimination also caused the plaintiff to have nightmares and other emotional distress. Adams Dep. 163:16-25, Ex. 1; Adams Affidavit ¶ 28, Ex. 2.

In September 2009, the plaintiff spoke with Jerry Brick, the general manager, about changing positions because he was having trouble in the shop and wanted to be transferred to the paint shop.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 17, 21, Ex. 2; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.  Jerry Brick first told the plaintiff that he could

not be moved to the paint shop because the plaintiff did not have painting experience.
Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-
111:1, Ex. 1; Adams Affidavit ¶ 18, Ex. 2.  After the plaintiff informed Jerry Brick of his
painting experience, Jerry Brick then changed his answer and told the plaintiff that there
were no open positions in the paint shop.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19,
108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 19, Ex. 2.  Plaintiff believes this to
be a lie because (1) the paint shop had a lot of work to be done and people from the main
shop would often go over to the paint shop to help out and (2) he was told that after he was
terminated people from the main shop worked in the paint shop.  Adams Dep. 68:16-23,
81:11-23, 83:1-94:19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 20, Ex. 2.

       At this point, plaintiff simply told Brick that he was having trouble in the shop and
may have to leave if he could not be transferred, but plaintiff never gave a verbal or written
resignation.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10,
108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 21, Ex. 2.; Answers to
Interrogatories, #10-12, Ex. 3; Exhibit 6.  John Fitch suggested that the plaintiff take his
vacation time.  Adams Dep. 87:16-88:14, Adams Affidavit, ¶ 22, Ex. 2.

       When plaintiff returned from taking his vacation time, he had a meeting with his
supervisors in which he was told that Jerry Brick had informed corporate that he had
resigned.  Adams Dep. 81:4-10, 88:15-89:6, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5.
The plaintiff told them that he was thinking about it but never did actually resign and could

not find another job.  Id.  Jerry Brick then told the plaintiff that there were no positions open and that October 31, 2009 would be the plaintiff's last day, but that he would not contest it if the plaintiff wanted to collect unemployment.  Id.

On October 31, 2009, plaintiff was terminated and forced out of the company. Adams Dep. 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶ 24, Ex. 2; Exhibit 5.

On November 8, 2009, the plaintiff wrote a letter to corporate explaining that he was sexually harassed at work, had complained of the same and that the supervisors did nothing about it.  Adams Affidavit ¶ 25, Ex. 2; Exhibit 5.  The plaintiff also told corporate that he felt "pushed out the door."  Id.

The plaintiff believes that he "was sexually harassed, discriminated against because of [his] disability and [] gender and the fact that [he] wasn't dating women, and retaliated against for complaining of the harassment and discrimination."  Adams Affidavit ¶ 29, Ex. 2; see also Adams Dep. 93:5-94:5, Ex. 1.

**III.   LAW AND ARGUMENT**

    **A.     Legal Standard**

        **1.     Summary Judgment**

A motion for summary judgment should be granted "where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to

judgment as a matter of law." <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d.Cir.1998).  It is the moving party's burden to establish that no genuine issue of material fact exist and judgment should enter as a matter of law. <u>Celotex Corp. v. Catreet</u>, 477 U.S. 317, 322-23 (1986). To defeat a motion for summary judgment, the non-moving party must present evidence that could be sufficient to return a jury verdict in the non-moving party's favor.  <u>Anderson v. Liberty Lobby</u>, Inc., 477 U.S. 242, 249 (1986). In reviewing the record, the evidence of the party opposing summary judgment is "to be believed, and all justifiable inferences are to be drawn in [that party's] favor." <u>Id.</u> at 255. Summary judgment shall be denied if a dispute is shown "over facts that might affect the outcome of the suit."  <u>Id.</u> at 248.  Therefore, the plaintiff must demonstrate a genuine issue of material fact as to whether defendant's proffered reason for termination was pretext for discrimination or whether the plaintiff's religion played a motivating factor in defendant's decision to termination the plaintiff.

**2.      Discrimination Standard**

The plaintiff claims discrimination on the basis of disability in violation of ADA and CFEPA, as well as gender and hostile work environment in violation of the Title VII and CFEPA of the Civil Rights Act.  In discrimination claims under the ADA, Title VII, and CFEPA, the three step burden shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817 (1973) is employed.  <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44 (2003) (determining that the burden shifting framework applied in

9

Title VII cases also applies to ADA claims); <u>Zubrow v. Solvay Pharms, Inc</u>., 207

Fed.Appx. 37, 38 (2d Cir.2006) (*citing* <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 42 (2d

Cir.2000)) (determining that claims of discrimination under CFEPA are governed by the

*McDonnell Douglas* three-part burden shifting framework.).   As such, the claims herein

will be analyzed under the burden-shifting federal standard of <u>McDonnell Douglas</u>, and for

the same reasons the summary judgment must be denied under the ADA (Count One) and

Title VII (Counts Four and Five), summary judgment must also be denied as to the CFEPA

claims (Counts Two, Three, Six and Seven)

     First, claimant must demonstrate a prima facie case.  <u>Quaratino v. Tiffany & Co.</u>,

71 F.3d 58, 64 (2d Cir. 1995).  To allege a prima facie case of discrimination, as originally

required in <u>McDonnell Douglas</u>, plaintiff must show that he: "1) that he belonged to a

protected class; 2) that he was qualified for the position he held; 3) that he suffered an

adverse employment action; and 4) that the adverse employment action occurred under

circumstances giving rise to an inference of discriminatory intent."[1] <u>Feingold v. New</u>

<u>York</u>, 366 F.3d 138, 152 (2d Cir. 2004) (internal citations omitted).  The plaintiff's burden

in establishing this prima facie case in *de minimis* and direct evidence is not required.

---

[1] Specifically with regards to the ADA, the plaintiff must show: "(1) [the] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [the plaintiff] suffered adverse employment action because of his disability." <u>Giordano v. City of New York</u>, 274 F.3d 740, 747 (2d Cir. 2001).

Taylor v. Local 32E Serv. Employees Int'l, Union, 286 F. Supp. 2d 246, 252 (S.D.N.Y. 2003) aff'd sub nom. Taylor v. Local 32E Serv. Employees Int'l Union, 118 F. App'x 526 (2d Cir. 2004); McGuiness v. Lincoln Hall, 263 F.3d 49, 52 (2d Cir.2001); Quaratino, 71 F.3d at 64; see also Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1094 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous.")  All of the facts must be considered in the light most favorable to the plaintiff and "a plaintiff may prevail if [he]submits enough believable evidence for a jury to find that an adverse employment decision resulted because of discrimination." Quaratino, 71 F.3d at 64.  Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.  Burdine, 450 U.S. at 254; Gallo v. Second Taxing District of City Of Norwalk Operating Under The Name Of South Norwalk Electric And Water, 507 F.Supp.2d 164, 172 (D.Conn.2007)..

Once the plaintiff has satisfied his prima facie case for discrimination, the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the adverse employment action at issue. Burdine, 450 U.S. at 254.  The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." Stratton v. Dept. for the Aging for the City of New York, 132 F.3d 869, 879 (2d Cir.1997).  "The employer's legitimate, non-discriminatory reason

must be both 'clear and specific.'" <u>Gallo</u>, 507 F.Supp.2d at 172  (quoting in part <u>Meiri v. Dacon</u>, 759 F.2d 989, 997 (2d Cir.1985)).

If the employer satisfies this burden of production, the burden shifts back to the claimant to show that the employer's reason "was merely a pretext for discrimination." <u>Gallo v. Prudential Residential Services, Ltd. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994). The plaintiff "may attempt to establish that he was a victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." <u>Reeves v. Sansderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 143 (2000). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 533, 113 S. Ct. 2742, 2761 (1993).  "[T]he plaintiff is not required to show that the employer's proffered reasons . . . played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors.'" <u>Back v. Hastings On Hudson Union Free School Dist.</u>, 365 F.3d 107, 123 (2d Cir. 2004).[2]

---

[2] A "mixed motives" analysis is also available in ADA claims.  <u>Parker v. Columbia Pictures Industries</u>, 204 F.3d 326, 337 (2d Cir. 2000) (applying the mixed-motive causation standard articulated in the Civil Rights Act of 1991 to claims of discrimination under the ADA).  The Second Circuit has not foreclosed the mixed motives framework under the ADA after the Supreme Court's decision in <u>Gross v. FBL Financial Services, Inc.</u>, 129 S.Ct. 2343 (2009).  <u>See</u> <u>Perry v. NYSARC, Inc.</u>, 424 F. App'x 23, 25-26 (2d Cir. 2011); <u>Bolmer v. Oliveira</u>, 594 F.3d 134, 148-49 (2d Cir. 2010).

The "ultimate issue" in an employment discrimination case is "whether the plaintiff has demonstrated that the adverse employment action was motivated at least in part by an 'impermissible reason, i.e. a discriminatory reason.'"  Stratton, 132 F.3d at 879.  The plaintiff can satisfy this burden by demonstrating that his disability and/or gender was a motivating or substantial factor in the adverse employment actions he faced.  Butts v. NY City Dept of House Pres. & Dev., 307 Fed. Appx 596, 599 (2009).  Accordingly, the plaintiff defeats summary judgment when his prima facie case, coupled with evidence that the employer's justification is false or erroneous, supports the inference that the adverse employment action was discriminatory.  Reeves, 530 U.S. at 148.

"Unless the defendants' proffered nondiscriminatory reason is 'dispositive and forecloses any issue of material fact', summary judgment is inappropriate."  Shain v. Ctr. for Jewish History, Inc., 418 F. Supp. 2d 360, 366 (S.D.N.Y. 2005) (quoting Carlton v. Mystic Transp., Inc., 202 F.3d 129, 135 (2d Cir. 2000)).  Therefore, on a motion for summary judgment, "plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for [the adverse employment action] is false *and* as to whether it is more likely [than not] that a discriminatory reason motivated the employer to make the adverse employment decision."  Gallo, 22 F.3d at 1225.  The Court further warned to be "cautious about granting summary judgment to an employer when, as here, its intent is at issue."  Id. "[T]he McDonnell Douglas analysis is neither "rigid" nor "mechanized" and that the primary focus is always

13

whether an employer treats an employee less favorably than other employees for an impermissible reason." Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 104 (2d Cir. 1989).

**B. Plaintiff Can Establish Prima Facie Cases of Disability Discrimination, Sexual Harassment/Hostile-Work Environment, Gender Discrimination and Retaliation.**

**1. Disability Discrimination under the ADA & CFEPA**

In order to present a prima facie case under the ADA, the plaintiff must show: "(1) [the] employer is subject to the ADA; (2) [the plaintiff] was disabled within the meaning of the ADA; (3) [the plaintiff] was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) [the plaintiff] suffered adverse employment action because of his disability." Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001). Of these factors, the defendant contends that the plaintiff cannot establish the first factor (that plaintiff was disabled) or the fourth factor (that the plaintiff suffered an adverse employment action, which did result because of his disability). Before addressing each factor, it is important to note that Congress intended a "broad scope of protection . . . afforded by the ADA" rather than a narrow definition that excludes people with limiting impairments from protection. 42 U.S.C. § 12101(a)(4). Thus, as discussed above in Part III.A.2, only minimal evidence is necessary to establish a prima facie case.

Plaintiff is disabled. Adams Dep. 111:10-12, 112:9-10, Ex. 1; Adams Affidavit ¶ 2, Ex. 2; Exhibit 4. Under the ADA, "disability" means: "(A) a physical or mental

14

impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an impairment."

42 U.S.C. § 12102.  The plaintiff has been diagnosed with a mental impairment, and has

presented the minimal evidence necessary to surpass summary judgment.  Bates Stamp

P000162 of Exhibit 4 diagnoses the plaintiff with "mild Mental Retardation and/or

Borderline abilities."  The defendant contends that the plaintiff cannot rely on his own

conclusory testimony to demonstrate his disability, and the plaintiff does not.  Exhibit 4 is

medical evidence from Newington Children's Hospital that substantiates plaintiff's

allegations made in his deposition testimony.  Although defendant contends that these

documents are inadmissible because they are unsworn, the defendant itself waived this and

any other objections because the defendant itself submitted these documents as part of

Exhibit B to its Local Rule 56(a)(1) statement and relied upon them in its motion for

summary judgment.  Where an employer offers itself such medical letters in support of its

own motion, the employer waives any objection to its admissibility. Capobianco v. City of

New York, 422 F.3d 47, 55 (2d Cir. 2005) (citing 10A Charles Alan Wright et al., *Federal

Practice & Procedure* § 2722, at 384-85 (3d ed. 1998)).  As such, these documents are

now properly before the court, and can be used by the plaintiff to demonstrate his

disability.[3]

---

[3] The defendant cannot claim that the documents were submitted simply to object to their
admissibility, because an objection to admissibility can be made without submitting them

Not only has the plaintiff provided medical documentation that he is disabled, but he also testified how it has substantially limited a major life activity.  "Major life activities" include learning and working, as well as disabilities that affect the operation of the brain.  42 U.S.C. § 12102(2).  Plaintiff has testified that he is a slow learner and has difficulty learning and remembering many things at once and how to perform new tasks.  Adams Dep. 105:12-14, Ex. 1; Adams Affidavit ¶ 3, Ex. 2.  As this impairment affects the brain, plaintiff has a per se disability under the 2008 ADA Amendments because it affects a major bodily function, as well as one that affects a major life activity.

Even if the Court determines that the plaintiff cannot establish that he had an actual mental impairment, the plaintiff can establish that he was "regarded as" having a disability by the defendant and its agents.  A plaintiff is regarded as having an impairment if the employer perceives and treats the plaintiff as if he has an impairment, regardless of his disability status.  Francis v. City of Meriden, 129 F.3d 281, 284-85 (2d Cir. 1997).  Here, plaintiff testified that he told the employer of an impairment, even if it is not one protected by the ADA.  Adams Dep. 21:16-22:5, 24:16-25:4, Ex. 1; Adams Affidavit ¶ 8, Ex. 2.  Furthermore, defendant's agents would often call him stupid, intimidate him when he called for help over the radio to ask for help with a job, and ask him "what the heck is wrong with you?" as if the plaintiff was impaired and not smart enough to do the job.

---

as an exhibit, and as such the defendant did more than object, and thereby relied on them by submitted them with its Local 56(a)(1) statement.

Adams Dep. 39:15-23, 87:21-88:1, 97:5-8, 168:20-169:3, Ex. 1; Adams Affidavit, ¶ 15,

Ex. 2; Ex. 6.  As such, plaintiff was regarded as having a mental impairment that

substantially limited the major life activities of learning and working.

Although plaintiff contends that he meets the first prong of an ADA prima facie

case, that he has a disability under the ADA, whether or not he has a disability must also

be considered under CFEPA, because the definition of disability is broader under the state

statute. Dzubaty v. Milford Bd. of Educ., CV065000824S, 2007 WL 2570413 (Conn.

Super. Ct. Aug. 20, 2007) (citing Beason v. United Technologies Corp., 337 F.3d 271, 275

(2d Cir.2003)).  CFEPA does not include the restrictive language does not include

"substantially limits one or more major life activities."  Therefore, all that is necessary

under CFEPA to be disabled is to have a mental disability, which the plaintiff has

demonstrated through his deposition testimony and medical documents.  Adams Dep.

111:10-12, 112:9-10, Ex. 1; Adams Affidavit ¶ 2, Ex. 2; Exhibit 4.  Specifically, Bates

Stamp P000162 of Exhibit 4 diagnoses the plaintiff with "mild Mental Retardation and/or

Borderline abilities."  As such, this evidence supports plaintiff's allegations that he is

disabled within the meaning of CFEPA.

Now that plaintiff has demonstrated that he is in fact disabled under the ADA and

CFEPA, he can also demonstrate that he suffered adverse employment actions because of

his disability.  Plaintiff can demonstrate that he was constructively discharged and that his

disability was a causal factor in such termination.  "The causal relationship between

disability and decision need not be direct, in that causation may be established if the disability caused conduct that, in turn, motivated the employer to discharge the employee." Sedor v. Frank, 42 F.3d 741, 746 (2d Cir. 1994).  Furthermore, the disability only needs to be a "motivating role" not the only reason.  Parker v. Columbia Pictures Industries, 204 F.3d 326, 337 (2d Cir. 2000).

The plaintiff was terminated, or at the very least, constructively discharged.  The plaintiff testified that he felt "forced out" and forced to resign, because, although nobody told him he was terminated, he did not resign, and the defendant gave him a last date of employment, despite his denials of resignation, and his supervisors refused to correct or end the harassment that had reached an intolerable level.  Adams Dep. 81:4-10, Ex. 88:15-89:6, 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶¶ 21-24, Ex. 2; Exhibit 5. The defendant makes a big deal that the plaintiff changed his testimony after conferring with counsel, but the defendant cannot demonstrate that the plaintiff changed his mind simply because of something counsel said.  This was not the first time that the plaintiff had voiced his opinion that he was constructively terminated.  On November 8, 2009, the plaintiff wrote a letter to the defendant's corporate offices explaining his version of what happened, and the plaintiff states that "I felt that I was push[ed] out the door."  Exhibit 5. Therefore, defendant's belittling of plaintiff's feeling that he was constructively discharged is unfounded.

A constructive discharge occurs "when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.  Working conditions are intolerable if they are so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Chertkova v. Connecticut General Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996) (internal citations omitted).  Here, the work atmosphere had reached an intolerable level.  Plaintiff testified that the harassment was daily and that it caused him embarrassment, nightmares, and emotional distress.  Adams Dep. 129:2-7, 163:16-25, Ex. 1; Adams Affidavit ¶ 27-28, Ex. 2.  Furthermore, the harassment was intentional because even after the plaintiff informed his supervisors of the treatment, they did nothing to correct the situation, and rather told the plaintiff that he would be subject to harassment in the shop and did not want to hear him complain about it, and that he should toughen up and "be a man."  Adams Dep. 61:4-14, 90:23-91:7, Ex. 1; Adams Affidavit ¶ 26, Ex. 2.  The plaintiff informed the general manager that he wanted to change departments because he was having difficulty in the shop and could not deal with the harassment and being picked on anymore.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 92:11-12, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 17, 21, Ex. 2; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.  Although plaintiff did say he might begin looking for other work, he never gave a verbal or written resignation.  Id.  Rather, after the plaintiff returned from vacation, he was told that Jerry Brick informed corporate

that he was leaving and that October 31, 2009 was chosen for the plaintiff to be his last day.  Adams Dep. 81:4-10, 88:15-89:6, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5.  The plaintiff felt forced out of the company.  Adams Dep. 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶ 24, Ex. 2; Exhibit 5.

Therefore, plaintiff has evidenced discriminatory conduct that was so difficult and unpleasant that a reasonable person would have also felt compelled to resign.  The plaintiff was subject to comments about his disability, such as that he was stupid and didn't know what he was doing and was unable to perform his job, in addition to other discriminatory comments based on gender.  The plaintiff has presented evidence that he was emotionally distressed and embarrassed by daily harassment, and even had nightmares about it.  Not only did this occur, but the defendant failed and/or refused to stop the conduct after plaintiff complained of it.  A reasonable person could conclude that they were being constructively discharged.

Even if the court concludes that the disability did not have a direct part in the constructive discharge directly, the disability did have an indirect role in the constructive discharge, which is all that is necessary.  Parker v. Columbia Pictures Industries, 204 F.3d 326, 337 (2d Cir. 2000); Sedor v. Frank, 42 F.3d 741, 746 (2d Cir. 1994).  The harassment plaintiff suffered was based on plaintiff's disability, and this harassment was the reason he complained to his managers and asked to be transferred to the paint department.  This caused the plaintiff to say he would have to start looking for jobs, which the defendant now

20

claims was a resignation, although it clearly was not, and the defendant took it upon itself to tell corporate that plaintiff was leaving without plaintiff ever giving a resignation. Had plaintiff not been harassed based on his disability, this sequence of events would not have occurred, which caused the defendant to give the plaintiff a final date of employment after telling corporate he had resigned, when in fact he had not.

Furthermore, the defendant's refusal or denial to transfer the plaintiff also constitutes an adverse employment action. "Because there are no bright-line rules as to which employment actions meet the threshold for "adverse," courts must make this determination on a case-by-case basis." Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219, 237 (D.Conn. 2001). As such, courts have determined that a "denial of a transfer request may constitute an adverse employment action where an employee's work environment prior to the request is objectively unfavorable." Pimentel v. City of New York, 2002 WL 977535, *3 (S.D.N.Y. 2002) (citing Mecklenberg v. New York City Off–Track Betting, 42 F.Supp.2d 359, 378 (S.D.N.Y.1999) (holding that denial of a request to transfer, from a department where working conditions were objectively unfavorable due to the measurable shortage in staff, to a department where conditions were more favorable constituted an adverse employment action)). Additionally, it is a discriminatory action for an employer to refuse to accommodate when an employee requests a reasonable accommodation on account of his disability. McBride v. BIC Consumer Products Mfg. Co., Inc., 583 F.3d 92, 100 (2d Cir. 2009).

As described in the preceding paragraphs, plaintiff's work environment was so intolerable that he felt constructively discharged, because the daily harassment based on his disability caused him embarrassment, emotional distress and nightmares.  As a result of the harassment, the plaintiff requested to be moved to the paint department.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 17, 21, Ex. 2; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.  The defendant first said no assuming the plaintiff did not have experience, and after finding out that the plaintiff had experience, told the plaintiff that there weren't any positions open.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 18, Ex. 2.  The plaintiff, however, had reason to believe that there were positions open because there was a lot of work to be done for the year in the paint shop, and he subsequently learned that people from the main shop worked in the paint shop after he was terminated.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 20, Ex. 2.  As such, because the plaintiff's working conditions were so intolerable that he subsequently requested a transfer which was denied, the plaintiff suffered an adverse employment action.  Furthermore, the plaintiff suffered an adverse employment action because his request to be transferred was also a request for an accommodation based on his disability since he was subject to the harassment based on his disability, and therefore, this was a way to continue working without being subjected to such harassment.

## 2. Sexual Harassment/Hostile Work Environment under Title VII & CFEPA

In order to survive summary judgment on a claim for a hostile work environment, plaintiff must demonstrate a prima facie case showing: "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (citing Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir.1999)).

First, the defendant contends that the conduct was "sufficiently severe." "Among the factors we consider are the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with [the] employee's work performance. Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (internal citations omitted); see also Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283 (1998).

> While the standard for establishing a hostile work environment is high, we have repeatedly cautioned against setting the bar too high, noting that "[w]hile a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*."

Id. (citing Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir.2003) (emphasis in original)). For example, in Feingold, the plaintiff, a Jewish gay male, demonstrated evidence of "hostile"

and "belligerent" comments made to him at work, such as a co-worker snapping at him saying that "I ain't nobody's teacher," which his non-gay co-workers were not subject to. Id. at 151.  The court concluded that a reasonable factfinder could determine that Feingold was subject to a hostile work environment because "Feingold declare[d] in his affidavit that the hostile treatment took a psychological toll on him, causing him to become depressed, to dread going to work, to seek a transfer, and to lose his desire to socialize with people in general."  Id.

Likewise, the plaintiff can show that the conduct he was subjected to was sufficiently severe.  Plaintiff presented evidence that the harassment was not infrequent, but rather occurred daily.  Adams Affidavit ¶¶ 27-28, Ex. 2; Exhibit 6.  The plaintiff was also subject to similarly hostile comments relating to his gender and disability, as Feingold was.  Supra, pp.4-5.  As discussed above, the plaintiff was subjected to comments that he was stupid, "what the heck is wrong with you" and similar comments that made him feel like he could not do his job.  Furthermore, the plaintiff presented testimony and an affidavit stating that he was subjected to comments relating to his failure to conform to gender stereotypes of being manly, such as (1) being on his knees is his best position, and that he was stared down while being on his knees,  Adams Dep. 40:20-25, 42:2-6, 61:4-14, 97:2-11, Ex. 1; Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6; (2) the word "sucks" being written next to his name on his blow torch by co-workers, Adams Dep. 103:21-104:18, 167:21-25, Ex. 1; Adams Affidavit, ¶ 12, Ex. 2;

Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6, and (3) that a co-worker stated that he "had" the plaintiff's mother the previous night, Adams Affidavit, ¶ 11, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3.  The plaintiff also suffered additional harassment when a co-worker threw nuts and bolts at him and threw an apple on his truck.  Adams Dep. 38:4-39:1, 39:6-40:9, 61:4-25, 169:11-170:19 Ex. 1; Adams Affidavit, ¶¶ 13-14, Ex. 2; Answers to Interrogatories, #9-5, 13, Ex. 3; Ex. 6.  The plaintiff has testified that he experienced this conduct, while other males at the shop did not experience such comments to this severity because he believes that he was perceived or treated as not manly enough or gay because he was not married and did not date women.  Adams Affidavit ¶ 29, Ex. 2; see also Adams Dep. 93:5-94:5, 95:12-15, Ex. 1.

While psychological harm is **not required** to establish a hostile work environment claim "[s]o long as the environment would reasonably be perceived, and is perceived, as hostile or abusive," Harris v. Forklift Sys., Inc., 510 U.S. 17, 22, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993), the plaintiff has still presented testimony and an affidavit, like Feingold, that the conduct took a psychological toll on him, causing him embarrassment and humiliation, as well as emotional distress and nightmares.  Adams Dep. 129:2-7, 163:16-25, Ex. 1; Adams Affidavit ¶¶ 27, 28, Ex. 2. Furthermore, these comments and conduct altered the plaintiff's employment for the worse in so far that he asked to be transferred departments and when he couldn't led him to start thinking about looking for other jobs because he could no longer tolerate being picked on.  Adams Dep. 92:11-12.

When considering the factors listed above, coupled with the psychological harm presented, the plaintiff has shown that the harassment was frequent, severe, humiliating, more than a mere utterance and had interfered with and altered the plaintiff's working environment and performance, and therefore, the evidence demonstrates that the harassment was "sufficiently severe" and that a reasonable person would also find this work environment to be hostile.

Furthermore, the plaintiff can also demonstrate the second prong of the prima facie case, that the conduct should be imputed to the employer.  The plaintiff told John Fitch, about the knees comment and Fitch said that he informed the plaintiff that while working in the shop the plaintiff would get harassed and picked on and that Fitch didn't want the plaintiff complaining to him and rather "be a man" and be tough.  Adams Dep. 40:20-25, 42:2-6, 61:4-14, 97:2-11, Ex. 1; Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.  After speaking with John Fitch about many of these events, the plaintiff spoke with supervisor Mario Abela in July and August of 2009 about the harassment and discrimination by Walters and was told to give the guy a chance, that he wasn't so bad.  Adams Dep. 62:12-18. 63:14-64:18, 168:20-169:7, Ex. 1; Adams Affidavit, ¶ 16, Ex. 2; Answers to Interrogatories, #10, 12, 14, Ex. 3; Exhibit 6.  Plaintiff's supervisors never ended the sexual harassment or discrimination that was created by plaintiff's co-workers.  Adams Dep. 90:23-91:7, Ex. 1; Adams Affidavit ¶ 26, Ex. 2.

As such, like in <u>Feingold</u>, plaintiff has presented sufficient evidence of a prima facie case of a hostile work environment based on comments and harassment received daily based on his gender, as well as his disability.  This conduct that the plaintiff was subject to was severe and altered the plaintiff's work environment, caused him to ask for a transfer and caused him psychological distress.  As such, a reasonable fact finder could find this to be a hostile work environment under both Title VII and CFEPA, and summary judgment should be denied.

### 3.   Gender Discrimination under Title VII & CFEPA

To establish a prima facie case of gender discrimination, the plaintiff must prove that he "he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of membership in the protected class." <u>Padilla v. Harris</u>, 285 F. Supp. 2d 263, 269 (D. Conn. 2003) (internal citation omitted).  A gender discrimination claim is cognizable under Title VII for discrimination based on failing to conform to gender stereotypes.  <u>See</u> <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 250-58 (1989) (finding gender discrimination where plaintiff suffered adverse employment action because she did not act femininely enough); <u>Dawson v. Bumble & Bumble</u>, 398 F.3d 211, 217-18 (2d Cir. 2005).  The claim is cognizable when the plaintiff alleges that the employer discriminated against him for failing to conform to gender stereotypes either through behavior or through appearance.  <u>Dawson</u>, 398 F.3d at 221.

27

In <u>Dawson</u>, the Second Circuit determined that Dawson had not alleged a proper gender discrimination claim because she did not allege that her adverse employment occurred because she did not act feminine enough—"[t]hat is, unlike the plaintiff in <u>Price Waterhouse</u>, she was not told by anyone at Bumble & Bumble that her continued employment depended upon her acting and speaking in a more 'feminine" manner.'" <u>Id.</u> The case at bar, however, is more like <u>Price Waterhouse v. Hopkins</u>, where the plaintiff made an adequate showing of gender discrimination where plaintiff suffered adverse employment action because she did not act femininely enough.  490 U.S. at 250-58. Likewise, plaintiff has presented evidence that he was not seen to be masculine enough. For example, when the plaintiff complained to John Fitch of Walter's comments, Fitch told the plaintiff that he had informed the plaintiff that he would be harassed in this position and therefore the plaintiff needed to "be a man" and "be tough."  Adams Dep, 99:9-21, Ex. 1.  Additionally, the plaintiff received comments comparing him to feminine sexual stereotypes, such as being on his knees and that he "sucks."  Furthermore, the plaintiff believes that he was harassed because he was not married and did not date women, and thus was perceived as not manly enough.  Adams Dep. 93:5-94:5, 95:12-15, Ex. 1.

The defendant also contends that the gender discrimination claim must fail because the plaintiff did not suffer an adverse employment action, but for similar reasons as his ADA claim, the plaintiff did suffer an adverse employment action.

The plaintiff was terminated, or at the very least, constructively discharged. The plaintiff testified that he felt "forced out" and forced to resign, because, although nobody told him he was terminated, he did not resign, and the defendant gave him a last date of employment, despite his denials of resignation, and his supervisors refused to correct or end the harassment that had reached an intolerable level.  Adams Dep. 81:4-10, Ex. 88:15-89:6, 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶¶ 21-24, Ex. 2; Exhibit 5.

Here, the work atmosphere had reached an intolerable level.  Plaintiff testified that the harassment was daily and that it caused him embarrassment, nightmares, and emotional distress.  Adams Dep. 129:2-7, 163:16-25, Ex. 1; Adams Affidavit ¶ 27-28, Ex. 2. Furthermore, the harassment was intentional because even after the plaintiff informed his supervisors of the treatment, they did nothing to correct the situation, and rather told the plaintiff that he would be subject to harassment in the shop and did not want to hear him complain about it, and that he should toughen up and "be a man."  Adams Dep. 61:4-14, 90:23-91:7, Ex. 1; Adams Affidavit ¶ 26, Ex. 2.  The plaintiff informed the general manager that he wanted to change departments because he was having difficulty in the shop and could not deal with the harassment and being picked on anymore.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 92:11-12, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 17, 21, Ex. 2; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.  Although plaintiff did say he might begin looking for other work, he never gave a verbal or written resignation.  Id.  Rather, after the plaintiff returned from

29

vacation, he was told that Jerry Brick informed corporate that he was leaving and that October 31, 2009 was chosen for the plaintiff to be his last day.  Adams Dep. 81:4-10, 88:15-89:6, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5.  The plaintiff felt forced out of the company.  Adams Dep. 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶ 24, Ex. 2; Exhibit 5.

   Therefore, plaintiff has evidenced discriminatory conduct that was so difficult and unpleasant, causing him embarrassment, nightmares and emotional distress, that a reasonable person would have also felt compelled to resign.  The plaintiff was subject to comments about his gender and not conforming to gender stereotypes, such as that he should be on his knees because that is his best position, that he sucks, and that he should "be tough" and "be a man."  The plaintiff has presented evidence that he was emotionally distressed and embarrassed by daily harassment, and even had nightmares about it.  Not only did this occur, but the defendant failed and/or refused to stop the conduct after plaintiff complained of it.  A reasonable person could conclude that they were being constructively discharged.

   The harassment plaintiff suffered was based on plaintiff's failure to conform to gender stereotypes, and this harassment was the reason he complained to his managers and asked to be transferred to the paint department.  This caused the plaintiff to say he would have to start looking for jobs, which the defendant now claims was a resignation, although it clearly was not, and the defendant took it upon itself to tell corporate that plaintiff was

leaving without plaintiff ever giving a resignation.  Had plaintiff not been harassed based on failing to conform to gender stereotypes, or had the employer stopped the harassment, this sequence of events would not have occurred, which caused the defendant to give the plaintiff a final date of employment after telling corporate he had resigned, when in fact he had not.

Furthermore, the defendant's refusal or denial to transfer the plaintiff also constitutes an adverse employment action.  "Because there are no bright-line rules as to which employment actions meet the threshold for "adverse," courts must make this determination on a case-by-case basis."  Wilburn v. Fleet Financial Group, Inc., 170 F.Supp.2d 219, 237 (D.Conn. 2001).  As such, courts have determined that a "denial of a transfer request may constitute an adverse employment action where an employee's work environment prior to the request is objectively unfavorable."  Pimentel v. City of New York, 2002 WL 977535, *3 (S.D.N.Y. 2002) (citing Mecklenberg v. New York City Off–Track Betting, 42 F.Supp.2d 359, 378 (S.D.N.Y.1999) (holding that denial of a request to transfer, from a department where working conditions were objectively unfavorable due to the measurable shortage in staff, to a department where conditions were more favorable constituted an adverse employment action)).

As described in the preceding paragraphs, plaintiff's work environment was so intolerable that he felt constructively discharged, because the daily harassment based on his failure to conform to gender stereotypes caused him embarrassment, emotional distress

31

and nightmares.  Had plaintiff not been harassed based on failing to conform to gender stereotypes, or had the employer stopped the harassment, the plaintiff would not have had to request a transfer.  When requesting the transfer, the defendant first said no assuming the plaintiff did not have experience, and after finding out that the plaintiff had experience, told the plaintiff that there weren't any positions open.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 18, Ex. 2.  The plaintiff, however, had reason to believe that there were positions open because there was a lot of work to be done for the year in the paint shop, and he subsequently learned that people from the main shop worked in the paint shop after he was terminated. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 20, Ex. 2.  As such, because the plaintiff's working conditions were so intolerable and he subsequently requested a transfer which was denied, the plaintiff suffered an adverse employment action.

Therefore, the plaintiff can establish a prima facie case of gender discrimination under both Title VII and CFEPA.

### 4.  Retaliation Under Title VII & CFEPA

Despite the defendant's characterization that the retaliation allegation is based on plaintiff's disability, the plaintiff's retaliation claim is based on the plaintiff's termination following the complaints of sexual harassment, as well as because the plaintiff protested

the discriminatory conduct and treatment he suffered because of his disability.

(Complaint, ¶79, Ex. 7).

　　　The <u>McDonnell Douglas</u> burden-shifting framework for Title VII discrimination claims also applies to plaintiff's retaliation claims for complaints of violations of Title VII and the ADA.  <u>Terry v. Ashcroft</u>, 336 F.3d 128, 141 (2d Cir. 2003) (internal citation omitted); <u>Weixel v. Bd. Of Educ. Of the City of N.Y.</u>, 287 F.3d 138, 148-49 (2d Cir. 2002); <u>Byra-Grzegorczyk v. Bristol-Myers Squibb Co.</u>, 572 F. Supp. 2d 233, 248 (D. Conn. 2008).  "To establish a *prima facie* case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'"  <u>Terry v. Ashcroft</u>, 336 F.3d at 141 (internal citation omitted).  "'Proof of causal connection can be established indirectly by showing that the protected activity was followed closely by' the adverse employment action or by evidence of disparate treatment of fellow similarly situated employees, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant.'"  <u>Blanco v. Brogan</u>, 620 F. Supp. 2d 546, 554-55 (S.D.N.Y. 2009) (citing <u>Davis v. State Univ. of New York</u>, 802 F.2d 638, 642 (2d Cir.1986); <u>DeCintio v. Westchester County Med. Center</u>, 821 F.2d 111, 115 (2d Cir.1987)).

　　　The plaintiff made complaints to John Fitch about the "knees" comment made by Justin Walters, the blow-torch incident, and about Justin Walters throwing an apple on

plaintiff's truck. <u>Supra</u>, pp. 4-5.  Furthermore, after speaking with John Fitch, the plaintiff

spoke with supervisor Mario Abela in July and August of 2009 about the harassment by

Walters.  <u>Supra</u>, pp. 4-5.  Finally, the plaintiff complained to Jerry Brick of his troubles in

the shop. <u>Supra</u>, pp. 4-5.  Plaintiff's supervisors never ended the sexual harassment or

discrimination that was created by plaintiff's co-workers.  Adams Dep. 90:23-91:7, Ex. 1;

Adams Affidavit ¶ 26, Ex. 2.Thus, the plaintiff participated in a protected activity.  <u>Kessler</u>

<u>v. Westchester County Dept. of Soc. Services</u>, 461 F.3d 199, 210 (2d Cir. 2006) ("As to

the 'protected activity' element of a Title VII [] retaliation claim, the plaintiff need only

'have had a good faith, reasonable belief that he was opposing an employment practice

made unlawful by Title VII.'") (internal citation omitted); <u>Reed v. A.W. Lawrence & Co.</u>,

<u>Inc.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) ("[A]n employee 'need not establish that the

conduct [s]he opposed was in fact a violation of Title VII,' but rather, only that she had a

'good faith, reasonable belief' that the underlying employment practice was unlawful.").

     As discussed above in Parts III.B.1 and III.B.3, the plaintiff suffered an adverse

employment action by not being transferred to another department because he had reason

to believe there were open positions and because the harassment based on his disability

and failure to conform to gender stereotypes was the reason he had to request a transfer, in

addition to being constructively discharged because his complaints about the main shop led

him to discuss the situation with his supervisors, which Jerry Brick took as a resignation,

34

although the plaintiff never actually resigned and was given a last day of employment by his supervisors.

The plaintiff can establish a causal connection.  Where there is "no meaningful lag time" and the adverse employment action occurs relatively close in time to the protected conduct, a causal connection can be established.  Terry v. Ashcroft, 336 F.3d 128, 145 (2d Cir. 2003) (finding a causal connection where the time lapsed between the protected activity and the adverse employment action to be "slightly less than three months").  The plaintiff complained to John Fitch in February, June, July and September 2009, to Mario Abela in the summer of 2009, and Jerry Brick in September 2009.  Supra, pp. 4-5.  The complaints occurred in the month and several months preceding the termination in October 2009.  As such, there is a causal connection between the plaintiff's protected activity and the adverse employment action, and plaintiff's retaliation claims under Title VII and CFEPA must surpass summary judgment.

### C. Defendant's proffered reason for the adverse employment actions were pretext.

As discussed previously, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 533, 113 S. Ct. 2742, 2761 (1993).  "[T]he plaintiff is not required to show that the employer's proffered reasons . . . played no role in the employment decision, but only that they were not the only reasons

and that the prohibited factor was at least one of the 'motivating' factors.'" Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 123 (2d Cir. 2004). Accordingly, the plaintiff defeats summary judgment when his prima facie case, coupled with evidence that the employer's justification is false or erroneous, supports the inference that the adverse employment action was discriminatory. Reeves v. Sansderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Here, the defendant proffers that the plaintiff was not terminated, because the plaintiff resigned, and that the failure to transfer is not an adverse employment action because the position did not exist. The plaintiff will take each in turn.

First, claiming that the plaintiff resigned is a pretext for discrimination. As discussed previously, the plaintiff was terminated, or at the very least, constructively discharged. The plaintiff testified that he felt "forced out" and forced to resign, because, although nobody told him he was terminated, he did not resign, and the defendant gave him a last date of employment, despite his denials of resignation, and his supervisors refused to correct or end the harassment that had reached an intolerable level. Adams Dep. 81:4-10, Ex. 88:15-89:6, 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶¶ 21-24, Ex. 2; Exhibit 5. This is not the first time he has alleged this, but rather the plaintiff wrote a letter to corporate headquarters after his termination stating that he felt that he "was push[ed] out the door." Exhibit 5. This is further supported by plaintiff testimony when the plaintiff returned from vacation, the defendant told the plaintiff that they told

corporate that he was resigning, which the plaintiff adamantly denied.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 88:15-89:6, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 21, 23, Ex. 2.; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 5; Exhibit 6.  The plaintiff told Brick that he had previously simply told Brick that he was having trouble in the shop and may have to leave if he could not be transferred, but that he had never gave a verbal or written resignation.  Id.  It was then that October 31, 2009 was **chosen for him by his managers** as his final date of employment. Adams Dep. 81:4-10, 88:15-89:6, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5. Furthermore, the only reason that the plaintiff complained and said he was considering finding a new job was because he was being harassed, and had the defendant stopped the harassment, the plaintiff would not have had to have this conversation.  Adams Dep. 81:4-10, 88:15-89:6, 92:11-12, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5.  The plaintiff denies resigning, because his last date of employment was given to him, rather than chosen by him, despite his denials that he had resigned, and the plaintiff believes he was constructively discharged because the defendant never stopped the harassment that caused an intolerable work environment after multiple complaints by the plaintiff.  The plaintiff was, in numerous ways, forced out.  As such, the defendant's proffered reason for termination is pretext.

Additionally, the reason that there were no open positions in the paint shop is a false and is a pretext for discrimination.  This is evidenced by the fact that after the

plaintiff requested the transfer, the reasons given that the transfer could not happen were inconsistent.  Jerry Brick first told the plaintiff that he could not be moved to the paint shop because the plaintiff did not have painting experience.  Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 18-20, Ex. 2.  After the plaintiff informed Jerry Brick of his painting experience, Jerry Brick then changed his answer and told the plaintiff that there were no open positions in the paint shop.  Id.  Plaintiff believes this to be a lie because the paint shop had a lot of work to be done and people from the main shop would often go over to the paint shop to help out, and he subsequently learned that people from the main shop worked in the paint shop after he was terminated.  Id.  Because the reasons given for not being able to move the plaintiff to the paint shop were inconsistent and because the plaintiff had reason to believe that there were open positions in the paint shop, the proffered reason by the defendant is unworthy of credence.

The defendant contends that the plaintiff's disability did not cause the plaintiff's adverse employment actions, however, the evidence presented in Part III.B.1 show that plaintiff's disability directly and/or indirectly caused plaintiff's adverse employment actions, and Part III.B.3 shows that plaintiff's failure to conform to gender stereotypes was a basis for the adverse employment actions because the defendant failed to correct the harassment and hostile work environment discussed in Part III.B.2.  Furthermore, the defendant's contention that the plaintiff never complained to the defendant about the

harassment is incorrect.  The plaintiff complained to John Fitch, Mario Abela, Jerry Brick and to corporate when he wrote his letter.  <u>Supra</u>, pp. 4-5, Exhibit 5.

      The plaintiff has presented evidence that the defendant's proffered reasons for the adverse employment actions are false, and this, coupled with the plaintiff's prima facie case, and supporting evidence of discriminatory conduct and the employer failing and/or refusing to stop the discriminatory conduct of its agents supports an inference of discrimination.

**IV.**    <u>**CONCLUSION**</u>

      For the foregoing reasons, genuine issues of material fact exist and as such, plaintiff's Objection to the Motion for Summary Judgment must be sustained.


               THE PLAINTIFF


               By_____/s/ James V. Sabatini_____
               James V. Sabatini, Esquire    CT 19899
               Sabatini and Associates, LLC
               One Market Square
               Newington, CT  06111
               Tel. No.:  860-667-0839
               Fax No.:  860-667-0867
               e-mail:  jsabatini@sabatinilaw.com

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2012, a copy of the foregoing Motion For Extension of Time to Respond To Defendant's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ James V. Sabatini
James V. Sabatini

40