UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREW ADAMS, | : | |
| | : | |
| Plaintiff, | : | Case No.: 3:11 cv 00427 (JCH) |
| | : | |
| vs. | : | |
| | : | |
| FESTIVAL FUN PARKS, LLC, d/b/a | : | |
| LAKE COMPOUNCE THEME PARK, | : | |
| | : | |
| Defendant. | : | MAY 4, 2012 |

## PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT

**Responses to Defendant's Local Rule 56(a)(1) Statement**

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Deny that the plaintiff "reapplied" to Lake Compounce, because he testified that he did not have to fill out another application or interview again, but rather he contacted the Director of Operations about returning, and the Director of Operations then spoke with the General Manager. Adams Dep. 20:10-23, 21:7-8,11-15, Ex. 1. Admit that Adams did return as a seasonal employee in 2004.

10. Admitted.

11. Admitted.

12. Admitted.

13. Deny that the plaintiff resigned.  October 31, 2009 was the date given to the plaintiff as his last day, and it was not chosen by him.  Adams Dep. 81:4-10, Ex. 88:15-89:6, Ex. 1; Adams Affidavit, ¶ 23, Ex. 2. The plaintiff testified that although nobody told him he was terminated, he felt "forced out of there," and as such believes he was terminated.  Adams Dep. 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit, ¶¶ 23-25, Ex. 2.  Deny that there were no open positions in the paint shop.  The paint shop needed extra help and often mechanic helpers would be sent over to the paint shop to help out, and therefore the plaintiff believes that there could have been an open position.  Adams Dep. 86:15-19, 108:3-23, 110:18-111:1, Ex. 1.

14. Admitted.

15. Denied.  The plaintiff informed John Fitch of Walters' comment that the plaintiff should be on his knees because this is his best position because he likes guys so much.  Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.   The plaintiff informed John Fitch and Mike Hayes, an HR representative, when the word "sucks" was written next to the plaintiff's name on his blow torch.  Adams Dep. 103:21-104:18, Ex. 1; Adams Affidavit, ¶ 12, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  The plaintiff also told John Fitch about Walters throwing an apple on his truck.  Adams Affidavit, ¶ 14, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  The plaintiff also complained

to Mario Abela in the summer of 2009 about the harassment and discrimination. Adams Dep. 63:17-64:18, Ex. 1; Adams Affidavit, ¶ 16, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  Finally, the plaintiff wrote a letter to corporate in November 2009 after his termination stating that he was harassed. Adams Affidavit, ¶ 25, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 5.

16. Denied.  The plaintiff informed John Fitch of Walters' comment that the plaintiff should be on his knees because this is his best position because he likes guys so much.  Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.   The plaintiff informed John Fitch and Mike Hayes, an HR representative, when the word "sucks" was written next to the plaintiff's name on his blow torch.  Adams Dep. 103:21-104:18, Ex. 1; Adams Affidavit, ¶ 12, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  The plaintiff also told John Fitch about Walters throwing an apple on his truck.  Adams Affidavit, ¶ 14, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  The plaintiff also complained to Mario Abela in the summer of 2009 about the harassment and discrimination. Adams Dep. 63:17-64:18, Ex. 1; Adams Affidavit, ¶ 16, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 6.  Finally, the plaintiff wrote a letter to corporate in November 2009 after his termination stating that he was harassed. Adams Affidavit, ¶ 25, Ex. 2; Answers to Interrogatories, #10, 12, Ex. 3; Exhibit 5.

17. Deny that there were no open positions in the paint shop.  The paint shop needed extra help and often mechanic helpers would be sent over to the paint shop to help out, and therefore the plaintiff believes that there could have been an open position.

Adams Dep. 84:13-19, 86:15-19, 109:3-23, 110:12-111:1, Ex. 1; see also Adams Affidavit, ¶¶ 18-20 , Ex. 2.

18. Denied.  The plaintiff was told that the defendant "sent people over from the shop, who were mechanic helpers, over there to help [] out with stripping and taping, and sanding."  Adams Dep. 109:10-14, Ex. 1.

19. No knowledge.

20. No knowledge.

21. Denied.  The plaintiff believes that he was discriminated against, retaliated against and terminated because he has a disability and is a slow learner due to that disability, as well as experiencing gender discrimination and sexual harassment, and retaliation.  Adams Dep. 105:8-17, Ex. 1; Adams Affidavit, ¶ 29, Ex. 2.

22. Admitted.

23. Agree that plaintiff's supervisor notified him about comments but disagree with the characterization of the testimony.  The testimony (Adams Dep, 99:9-21, Ex. 1) is as follows:

99

```
 9   Q   Who told you not to come to them with complaints?
10       A   John Fitch, before I was hired, he told me the
11   rules.
12       Q   Before you got hired?
13       A   Yes, before I switched over to the maintenance
14   shop.
15       Q   What did he say?
```

> 16   A   Just I want to let you know that you're going to
>
> 17   get picked on and harassed in the shop, that's the nature of
>
> 18   working in the shop, don't come to me with complaints every
>
> 19   day, because I don't want to hear it, be a man, be tough.
>
> 20       So I thought, okay, being picked on, maybe I can
>
> 21   deal with it for a while, but not every day.

24. Admitted.

**Disputed Issues of Material Fact**

1. Plaintiff suffers from a slight mental retardation.  Adams Dep. 111:10-12, 112:9-10, Ex. 1; Adams Affidavit ¶ 2, Ex. 2; Exhibit 4.

2. Plaintiff's disability causes him to be a slow learner and to have difficulty remembering many things.  Adams Dep. 105:12-14, Ex. 1; Adams Affidavit ¶ 3, Ex. 2; Exhibit 4.

3. Plaintiff commenced working at Lake Compounce as a seasonal worker in 1997, and continued to be a seasonal worker through 2007.  Adams Dep. 12:6-14:15, 15:14-16:10, Ex. 1; Adams Affidavit ¶ 4, Ex. 2.

4. In 2008, the plaintiff was hired as a full-time employee as a mechanic or maintenance helper.  Adams Dep. 16:2-7, Ex. 1; Adams Affidavit ¶ 5, Ex. 2.

5. As a mechanic helper, the plaintiff's job was supposed to be assisting mechanics, but he often did jobs on his own, and still received mechanic helper pay.  The plaintiff believes that he should have gotten more individualized training or done more shadowing.  Adams Dep. 123:2-124:24, 126:13-23, Ex. 1; Adams Affidavit ¶ 6, Ex. 2.

6. John Fitch was plaintiff's supervisor, and Mario Abela was also a supervisor ahead of Fitch. Jerry Brick was the general manager. Adams Dep. 17:11-17, 24:14-15, Ex. 1; Adams Affidavit ¶ 7, Ex. 2.

7. John Fitch and Jerry Brick at Lake Compounce both knew of plaintiff's disability as a slow learner because plaintiff informed them of the same. Adams Dep. 21:16-22:5, 24:16-25:4, Ex. 1; Adams Affidavit ¶ 8, Ex. 2.

8. While a full-time employee, the plaintiff was subject to sexual harassment and discrimination at work. Adams Affidavit ¶ 9, Ex. 2.

9. Beginning in February 2009, the plaintiff began to keep a typed log of discriminatory events and harassment that he was subject to. Adams Dep. 57:6-60:20, Ex. 1; Exhibit 6.

10. In February & July 2009, Justin Walters, told the plaintiff, while working on his knees, that the plaintiff should get down on his knees because being on my knees was my best position because he liked men. Walters also stared the plaintiff down while he worked on his knees. The plaintiff told John Fitch, about this comment. Fitch said that he informed the plaintiff that while working in the shop the plaintiff would get harassed and picked on and that Fitch didn't want the plaintiff complaining to him. Fitch told the plaintiff to "be a man" and be tough. Adams Dep. 40:20-25, 42:2-6, 61:4-14, 97:2-11, Ex. 1; Adams Affidavit, ¶ 10, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

11. In June 2009, Justin Walters told the plaintiff that he "had" the plaintiff's mother last night and that she was good. Adams Affidavit, ¶ 11, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3.

12. On June 2, 2009, plaintiff could not find his blowtorch.  When plaintiff found it in the shop, someone had written next to his name "sucks" in black permanent marker.  The plaintiff informed John Fitch and Mike Hayes, in HR, of this incident.  Adams Dep. 103:21-104:18, 167:21-25, Ex. 1; Adams Affidavit, ¶ 12, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

13. In July 2009, Justin Walters through nuts and bolts at the plaintiff.  When they landed in the parts washer, the fluid splashed onto the plaintiff.  Adams Dep. 39:6-40:9, Ex. 1; Adams Affidavit, ¶ 13, Ex. 2; Answers to Interrogatories, #13, Ex. 3.

14. In September 2009, Justin Walters threw an apple at plaintiff's truck.  The plaintiff told John Fitch about this, but Fitch did not reprimand Walters or do anything about it.  Adams Dep. 38:4-39:1, 61:4-25, 169:11-170:19; Adams Affidavit, ¶ 14, Ex. 2; Answers to Interrogatories, #5, 9-12, Ex. 3; Exhibit 6.

15. In October 2009, Justin Walters told the plaintiff that he was stupid and said "what the heck is wrong with you?"  This comment was unwelcome and offensive.  Adams Dep. 39:15-23, 97:5-8, 168:20-169:3, Ex. 1; Adams Affidavit, ¶ 15, Ex. 2; Ex. 6.

16. The plaintiff spoke with supervisor Mario Abela in July and August of 2009 about the harassment and discrimination by Walters and was told to give the guy a chance, that he wasn't so bad.  Adams Dep. 62:12-18. 63:14-64:18, 168:20-169:7, Ex. 1; Adams Affidavit, ¶ 16, Ex. 2; Answers to Interrogatories, #10, 12, 14, Ex. 3; Exhibit 6.

17. In September 2009, the plaintiff spoke with Jerry Brick, the general manager about changing positions because he was having trouble in the shop and wanted to

be transferred to the paint shop because he was having difficulty in the main shop. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶¶ 17, 21, Ex. 2; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.

18. Jerry Brick first told the plaintiff that he could not be moved to the paint shop because the plaintiff did not have painting experience. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 18, Ex. 2.

19. After the plaintiff informed Jerry Brick of his painting experience, Jerry Brick then changed his answer and told the plaintiff that there were no open positions in the paint shop. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 19, Ex. 2.

20. Plaintiff believes this to be a lie because the paint shop had a lot of work to be done and people from the main shop would often go over to the paint shop to help out. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 20, Ex. 2.

21. At this point, plaintiff simply told Brick that he was having trouble in the shop and may have to leave if he could not be transferred, but plaintiff never gave a verbal or written resignation. Adams Dep. 68:16-23, 81:11-23, 83:1-94:19, 85:4-13, 86:15-19, 87:16-88:10, 108:18-109:23, 110:12-111:1, Ex. 1; Adams Affidavit ¶ 21, Ex. 2.; Answers to Interrogatories, #10-12, Ex. 3; Exhibit 6.

22. John Fitch suggested that the plaintiff take his vacation time. Adams Dep. 87:16-88:14, Adams Affidavit, ¶ 22, Ex. 2.

23. When plaintiff returned he had a meeting with his supervisors in which he was told that Jerry Brick told corporate that he had resigned. The plaintiff told them that he was thinking about it but never did actually resign and could not find another job. Jerry Brick then told the plaintiff that there were no positions open and that October 31, 2009 would be the plaintiff's last day, but that he would not contest it if the plaintiff wanted to collect unemployment. Adams Dep. 81:4-10, 88:15-89:6, Ex. 1; Adams Affidavit ¶ 23, Ex. 2; Exhibit 5.

24. On October 31, 2009, plaintiff was terminated and forced out of the company. Adams Dep. 81:4-10, Ex. 88:15-89:6, 90:23-91:7, 91:17-92:3, 92:10-12, Ex. 1; Adams Affidavit ¶ 24, Ex. 2; Exhibit 5.

25. On November 8, 2009, the plaintiff wrote a letter to corporate explaining that he was sexually harassed and discriminated against at work, had complained of the same and that the supervisors did nothing about it. The plaintiff told corporate that he felt "pushed out the door." Adams Affidavit ¶ 25, Ex. 2; Exhibit 5.

26. Plaintiff's supervisors never ended the sexual harassment or discrimination that was created by plaintiff's co-workers. Adams Dep. 90:23-91:7, Ex. 1; Adams Affidavit ¶ 26, Ex. 2.

27. The daily harassment and discrimination caused the plaintiff embarrassment. Adams Dep. 129:2-7, Ex. 1; Adams Affidavit ¶ 27, Ex. 2.

28. The harassment and discrimination caused the plaintiff to have nightmares and other emotional distress. Adams Dep. 163:16-25; Adams Affidavit ¶ 28, Ex. 2.

29. The plaintiff believes that he "was sexually harassed, discriminated against because of [his] disability and [] gender and the fact that [he] wasn't dating

women or married, and retaliated against for complaining of the harassment and discrimination." Adams Affidavit ¶ 29, Ex. 2; see also Adams Dep. 93:5-94:5, 95:12-15, Ex. 1.

THE PLAINTIFF

By____/s/ James V. Sabatini_____
James V. Sabatini, Esquire   (CT 19899)
Sabatini and Associates, LLC
One Market Square
Newington, CT  06111
Tel. No.:  860-667-0839
Fax No.:  860-667-0867
e-mail:  jsabatini@sabatinilaw.com

**ELECTRONIC CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2012, a copy of the foregoing Motion For Extension of Time to Respond To Defendant's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                  /s/ James V. Sabatini
                                                                    James V. Sabatini